Laverna WHITE, et al., On Behalf of Themselves and Others Similarly Situated, Plaintiffs,

v.

William H. FAUVER, et al., Defendants.

Civ.A. No. 97–5127.

United States District Court, D. New Jersey.

Sept. 29, 1998.

Jaime M. Kaigh, Rodney D. Ray, Kaigh & Ray, P.C., Cherry Hill, NJ, Paul J. Hirsh, Whipple, Ross & Hirsh, P.A., Parsippany, NJ, Justin T. Loughry, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, P.C., Cherry Hill, NJ, Audrey J. Bomse, Picataway, NJ, for Plaintiffs.

Peter Verniero, Attorney General of New Jersey, Ronald L. Bollheimer, Gregory Spellmeyer, Deputy Attorneys General, Trenton, NJ, for Defendants, William Fauver, Scott Faunce, Robert Ziegler, Edward Delbow, Luther Weldin, and Lance Meehan.

## OPINION

ORLOFSKY, District Judge.

Plaintiffs have filed this civil rights class action [1] on behalf of all inmates at Bayside State Correctional Facility ("Bayside"), located in Leesburg, New Jersey, alleging that prison officials and guards engaged in a pattern of physical abuse, threats, and subjected plaintiffs to a series of unconstitutional living conditions, in retaliation for the July, 1997, murder of a prison guard allegedly committed by an inmate. Six of the defendants, William Fauver, Scott Faunce, Robert Ziegler, Edward Delbow, Luther Weldin, and Lance Meehan ("Moving Defendants"), have moved to partially dismiss the complaint for failure to state a claim upon which relief can

1. The proposed class consists of "all inmates confined at Bayside [State Correctional Facility] since July 30, 1997." First Amended Complaint ¶ 27.

be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Moving Defendants' motion to dismiss also serves as an answer to Plaintiffs Delbueno and Scullions' use of excessive force allegations as they pertain to Defendants, Peachy, Keiser, Mitchell, and Veach, Jr., although Defendants, Peachy, Keiser, Mitchell, and Veach, Jr. already filed an answer, on January 15, 1998. Plaintiffs have cross-moved for leave to file a second amended complaint. Defendants have also moved to strike Plaintiffs' brief in opposition to Defendants' motion to dismiss. Because Plaintiffs' claims arise under 42 U.S.C. §§ 1983, 1985, 1988, and the Eighth Amendment of the United States Constitution, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1331, 1343.

This case presents a novel legal question of first impression in this Circuit, requiring this Court to divine the meaning of the exhaustion requirement embodied in the recently adopted Prison Litigation Reform Act ("PLRA"), specifically, 42 U.S.C. § 1997e(a).[2] Section 1997e(a) mandates that prisoners exhaust their available administrative remedies before they may file claims under 42 U.S.C. § 1983, or any other federal law. In particular, I must determine what Congress intended when it limited the scope of the exhaustion requirement to those civil actions "with respect to prison conditions," and required the exhaustion of only "such administrative remedies as are available."

For the reasons set forth below, I will grant Plaintiffs' cross-motion for leave to file a second amended complaint, except with respect to proposed Count V. In addition, I will grant in part and deny in part the Moving Defendants' motion to partially dismiss the First and Second Amended Complaints for failure to state a claim upon which relief can be granted. Specifically, I will grant Moving Defendants' motion as to the allegations of unconstitutional prison conditions, contained in Count I of the First and Second Amended Complaints, and all of Count III of the First and Second Amended Complaints, except with respect to Plaintiff, Phillips. I

will deny Moving Defendants' motion to dismiss as to all other Counts and allegations. I will also deny Defendants' motion to strike Plaintiffs' brief in opposition to Defendants' motion to dismiss.

## I. BACKGROUND

For the purposes of a motion to dismiss, I must accept as true the facts alleged by Plaintiffs and draw all reasonable inferences in their favor. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). Unless otherwise noted, I look to the proposed Second Amended Complaint for the factual allegations relevant to these motions. *See infra* Part II.

On July 30, 1997, Officer Fred Baker, a prison guard at Bayside, was murdered and a Bayside inmate was charged with the crime. *See* Second Am. Comp. at ¶¶ 98–100. Plaintiffs contend that, in response to, or in retaliation for that murder, Bayside guards and officials allegedly engaged in a pattern of conduct, which included threats, violence, and mistreatment directed against Plaintiffs and the class they seek to represent.

On October 17, 1997, several inmates filed this action seeking damages and injunctive relief pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988, and, in addition, sought an emergency temporary restraining order. On that same day, I held a telephonic hearing, during which I denied the request for a temporary restraining order, but, with the consent of the defendants, I allowed Plaintiffs to conduct limited discovery, permitting plaintiffs' counsel to interview inmates at Bayside.

A case management conference was held on October 27, 1997, at which certain deadlines were established, including an October 31, 1997, deadline for Plaintiffs to file an amended complaint. After Plaintiffs' counsel completed the initial series of inmate interviews at Bayside, Plaintiffs filed their First Amended Complaint on October 31, 1997. On October 31, 1997, this Court held another telephone conference call, during which I permitted the Plaintiffs to conduct another week of inmate interviews. I also set De-

---

**2.** Section 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

cember 15, 1997 as the date of the next conference call with counsel.

During the December 15, conference call, I established January 15, 1998, as the deadline by which the defendants had to answer or otherwise move in response to the amended complaint. Consequently, on January 15, 1998, the Moving Defendants filed a motion to partially dismiss for failure to state a claim upon which relief can be granted and Defendants, Kaiser, Mitchell, Peachy, and Veach, filed an answer. Subsequently, Plaintiffs filed a brief in opposition to the motion to partially dismiss and cross-moved for leave to file a second amended complaint.

In Plaintiffs' proposed Second Amended Complaint, various inmates allege that Bayside guards and officials, without any provocation, physically assaulted prisoners with black jacks, or by pushing the inmates' heads into walls or the ground. *See, e.g., id.* ¶¶ 6–7, 11, 15, 20–22, 25–30, 36, 42, 45, 49, 56, 62–63, 70, 71, 72, 73, 74, 75, 76–77. Some of these inmates were allegedly handcuffed and naked while they were assaulted. *See, e.g., id.* ¶¶ 7, 11, 14, 20–22, 63, 70. According to Plaintiffs, the guards then attempted to cover up these physical attacks by threatening inmates with further harm if they disclosed the details of the assaults to the prison medical staff. *See, e.g., id.* ¶¶ 74, 75, 77. In addition, the guards allegedly filed false disciplinary charges against the victims of the beatings to conceal the physical assaults, by implying that these inmates had instigated the violence. *See, e.g., id.* ¶¶ 9, 29, 39, 49, 59, 66. Inmates often received disciplinary sanctions as a result of the filing of these allegedly false disciplinary charges. *See e.g., id.* ¶¶ 9, 29.

The Second Amended Complaint further alleges that Bayside guards and officials imposed intolerable, unconstitutional conditions upon Plaintiffs, such as serving rancid food and depriving inmates of showers, bedding, mattresses, and clothing. *See id.* ¶ 106.

Plaintiffs claim that Bayside guards and officials conspired "to maintain [an] atmosphere of terror and intimidation" by this campaign of violence and deprivation of basic human necessities. *Id.* ¶ 123. The conspiracy allegedly "deprived plaintiff inmates of equal protection of the laws and equal privileges and immunities of the laws, by depriving them of the right to be free from cruel and unusual punishment, [and] the right to adequate medical care." *Id.* ¶ 124.

Plaintiffs also allege that in response to the filing of this law suit, Bayside guards and officials "communicated [further] threats of physical harm to members of the inmate population who have met with plaintiffs' counsel." *Id.* ¶ 129. Plaintiffs contend that the Bayside guards and officials made such threats to dissuade the inmates from seeking access to the courts to redress their grievances. *See id.* ¶¶ 130–31.

The named class plaintiffs in this action, Laverna White, Tony Bacon, Andrew Gordon, Jeffrey Nosal, James Delbueno, Kenneth Scullion, Mark Green, Jason Phillips, John Wilson, Tom Branigan, Frederick Brown, Adrian Torres, Alfonse Torres, Sergio Perez, Vermonie Pierce, Michael Shontz, James Golden III, Samuel Gomez, Daniel Blaze, and Carlos Martinez,[3] were all inmates at Bayside on July 30, 1997, and during the relevant time period following the murder of Officer Baker. *See* Second Am. Comp. at ¶ 4. Among others, the Second Amended Complaint names William H. Fauver, Scott Faunce, Robert Ziegler, Edward Delbow, Luther Weldin and Lance Meehan as defendants in this action. These six defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4] Defendants, Kaiser, Mitchell, Peachy, and Veach, do not join in this motion to partially dismiss, because they filed an answer, on January 15, 1998. Because these defendants have already filed

---

**3.** Some of the names as listed in the caption of the Second Amended Complaint differ slightly from those mentioned in the text of the Second Amended Complaint.

**4.** Moving Defendants' motion to dismiss also serves as an answer to Plaintiffs Delbueno and

Scullions' use of excessive force allegations as they pertain to Defendants Peachy, Keiser, Mitchell, and Veach, Jr. *See* Moving Defendants' Brief in Support of Motion to Partially Dismiss Plaintiffs' Complaint ("Defendants' Brief") at 3 n.*.

an answer, Moving Defendants' have filed a motion for partial dismissal.

In response to Moving Defendants' motion to partially dismiss, Plaintiffs cross-moved for leave to file their Second Amended Complaint and relied, in part, upon that pleading to oppose the motion to dismiss. Moving Defendants oppose the filing of the Second Amended Complaint substantively and further object to Plaintiffs' reliance upon the Second Amended Complaint in opposition to the motion to dismiss, prior to obtaining the Court's permission to file it.[5]

## II. LEGAL STANDARD GOVERNING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court may only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988); *Guyette v. Stauffer Chem. Co.,* 518 F.Supp. 521, 526 (D.N.J.1981) (Debevoise, J.). While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, *see, e.g., Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), the Court may dismiss a complaint where, under any set of facts which could be shown consistent with the complaint, the plaintiff is not entitled to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *see also Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and factfinding").

Having filed the First Amended Complaint prior to filing any responsive pleadings, Plaintiffs now require leave of court to file the Second Amended Complaint. *See* Fed. R.Civ.P. 15(a). Rule 15(a) instructs that "leave shall be freely given when justice so requires." *See id.*

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3d Cir.1997). Thus, Plaintiffs' motion for leave to file the Second Amended Complaint must be granted, unless Moving Defendants can demonstrate that it, too, fails to state a claim, making such an amendment futile.[6]

"Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988) (citing *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983)); *see Jordan v. New Jersey Department of Corrections,* 881 F.Supp. 947, 954 (D.N.J.1995) (Rodriguez, J.). Because the same legal standard applies to the analysis of the motion to dismiss and the motion to amend, I will address the motion for leave to amend the complaint and the motion to dismiss together as if they were

---

5. On February 13, 1998, Defendants also filed a motion to strike Plaintiffs' brief in opposition to Defendants' motion to dismiss. As I discuss below, the standards for a motion to dismiss and for a motion for leave to file an amend complaint both require the Court to assess the claims in the Second Amended Complaint. *See* Section II, *supra.* Thus, Plaintiffs could only defend against the motion to dismiss and support their motion for leave by referring to the as yet unfiled Second Amended Complaint. Consequently, I will deny Defendants' motion to strike the Plaintiffs' brief in opposition to the motion to partially dismiss.

6. Moving Defendants have opposed the Plaintiffs' motion for leave to file a second amended complaint solely on the grounds of futility. *See* Moving Defendants' Brief in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint at 4–5.

one motion to dismiss the Second Amended Complaint.

## III. DISCUSSION

The Moving Defendants contend that further amendment of Plaintiffs' First Amended Complaint would be futile. In support of their contention, Moving Defendants have advanced a series of grounds upon which they argue Plaintiffs fail to state a claim in either the First or Second Amended Complaints.

### A. Specificity

■ Moving Defendants argue that Plaintiffs' factual allegations do not provide sufficient detail to "satisfy the factual specificity standard which requires allegations of the time of the unlawful conduct and the identity of the officials to which the conduct is attributable." Moving Defendants' Brief at 9–10. "Insofar as defendants challenge the complaint's lack of specificity, it must be borne in mind that the test for the sufficiency of a complaint under the Federal Rules of Civil Procedure is a liberal one." *Guyette,* 518 F.Supp. at 526. Furthermore, Plaintiffs must merely allege facts with sufficient specificity to provide "adequate notice to enable the defendants to frame an answer." *Freedman v. City of Allentown,* 853 F.2d 1111, 1114 (3d Cir.1988).[7]

■ The Second Amended Complaint satisfies this specificity requirement. It sets forth dates, times, detailed descriptions of particular incidents, and, frequently, the names of the prison guards involved in a given incident. For example, the Plaintiffs allege that, on July 30, 1997, at approximately 8 p.m., Special Operations Guard ("SOG"), Sergeant Schaeffer, entered Mark Green's cell "and pushed Green's head into the wall, splitting open his lip." Second Am. Compl. ¶¶ 19–20. The Second Amended Complaint further states that, on August 14, 1997, "Schaeffer rammed Green's head into a metal box on the wall twice" while transferring Green to administrative segregation. *Id.* ¶ 22. At the same time, Correctional Officer ("CO") Moore "punched [Green] in the face and his head hit the wall," all this while "Green was naked and handcuffed." *Id.*

Another example makes it clear that Plaintiffs have alleged more than sufficient detail to provide Moving Defendants with the requisite level of specificity. On August 30, 1997, several SOGs entered the cell of Jason Phillips (a.k.a. Andrew J. Phillips, II), because he had on boots and socks, despite an order from prison officials that all prisoners wear only slippers. One officer repeatedly told Phillips to apologize for the death of Officer Baker. After Phillips did not "say 'I'm sorry, Mr. Officer' loud enough, a second, larger SOG officer . . . hit plaintiff Phillips twice with his baton and punched him, again on the right side until Phillips fell down into a squat position." Second Am. Compl. ¶ 25. Later that day, Phillips was handcuffed and "told to get on his knees. He was then hit with a black jack, kicked in his side and had his face pushed twice into a metal mesh cage (where weights were stored)." *Id.* ¶ 27. After this beating, Phillips was returned to his cell, where he was left naked for about an hour. *See id.* ¶ 28. He was

---

**7.** Moving Defendants' argue that § 1983 claims require a plaintiff to plead with heightened specificity. After the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), however, courts in the Third Circuit have both accepted and rejected a heightened pleading standard for § 1983 claims against individual government officials. In *Leatherman,* the Supreme Court held that federal courts may not apply a heightened specificity requirement to § 1983 claims against municipalities, but the Court explicitly limited its holding to municipalities and did not extend it to individual government officials. *See id.* at 166–67, 113 S.Ct. 1160.

The response to *Leatherman* in the Third Circuit, and even in the District of New Jersey, has varied. In *Jordan v. New Jersey Dep't of Corrections,* 881 F.Supp. 947 (D.N.J.1995), Judge Rodriguez found that a plaintiff need only allege with "factual specificity" and at no point did he mention "heightened specificity." *See id.* at 950–51. By contrast, in *D'Aurizio v. Palisades Park,* 963 F.Supp. 387 (D.N.J.1997), Judge Greenaway held that "claims for violations of civil rights in this circuit are subject to heightened standards of factual specificity in pleading." *Id.* at 391–92 (quoting *Rourke v. United States,* 744 F.Supp. 100, 104 (E.D.Pa.1988), *aff'd,* 909 F.2d 1477 (3d Cir.1990)). Because I find that Plaintiffs' allegations would satisfy either pleading standard, I need not determine which is the appropriate one.

then given underwear "but remained from July 31 to August 4, 1997 with just his underwear and a dirty sheet to sleep on, which was given to him by his cell-mate." *Id.* Phillips did not receive pants until August 4, and he did not get a mattress until August 8, 1997. *See id.*

According to the Second Amended Complaint, the alleged abuse of Phillips did not end there. On August 5, 1997 Phillips was revisited by SOG officers, who "punched, kicked and hit [him] with a black jack and was told by one officer that if he did not plead guilty to [disciplinary] charges," the abuse would continue. *Id.* ¶ 29. At the disciplinary hearing later that day, Phillips did plead guilty. *See id.* Nonetheless, upon returning Phillips to his cell after the hearing, "[h]e was once again assaulted, kicked and hit with the baton. One of the officers got on his bed and poured orange juice on top of Phillip's head and back and told him that his new name was OJ." *Id.* ¶ 30.

█ Nonetheless, Moving Defendants argue that the Plaintiffs fail "to make any specific allegation against any named defendant."[8] Moving Defendants' Brief at 9. First, this is inaccurate in the context of the Second Amended Complaint, which repeatedly provides the names of prison guards. *See, e.g.,* Second Am. Compl. ¶¶ 6, 11, 19–22, 45, 49, 56, 74. Second, Plaintiffs' inability to name specific guards as the perpetrators of the alleged beatings results from the fact that many of the inmates were beaten with their faces to the ground or wall. *See, e.g., id.* ¶¶ 41, 62. Assuming the truth of these allegations, surely, Plaintiffs' Second Amended Complaint cannot be dismissed because the perpetrators of the alleged assaults took steps to conceal their identities. Third, Moving Defendants possess information about which guards were on duty in particular units on particular days. Plaintiffs can only obtain this information through discovery.[9] Finally, even a pleading standard of heightened specificity does not require perfect specificity. Plaintiffs have supplied sufficient information to put the Moving Defendants on notice of the Plaintiffs' claims. With minimal investigation, Moving Defendants will likely be able to ascertain the names of those individuals who are alleged to have participated in the beatings described by the Plaintiffs in the Second Amended Complaint.

**B. Exhaustion of Administrative Remedies**

With respect to Plaintiff, Laverna White ("White"), the Moving Defendants argue that White failed to exhaust his administrative remedies in appealing his disciplinary sanctions, which were allegedly based on false charges. Moving Defendants further contend that, pursuant to the PLRA, this Court must dismiss the claims of false disciplinary charges, for failure to exhaust administrative remedies. Additionally, "[d]istrict courts should enforce the exhaustion requirement sua sponte if not raised by the defendant." *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998). Sua sponte, this Court also notes that the PLRA arguably may apply to all of the claims made by all of the plaintiffs in the Second Amended Complaint.

---

8. In each version of their Complaint, including the proposed Second Amended Complaint, Plaintiffs include some fictitious defendants to describe those Bayside guards and officials whose names the Plaintiffs do not know. Moving Defendants suggest, however, that "some federal courts within the Third Circuit have held that [the use of fictitious defendants] is improper." Moving Defendants' Brief at 2 n.* (citing *Agresta v. City of Philadelphia,* 694 F.Supp. 117, 119 n. 1 (E.D.Pa.1981) and *Breslin v. City & County of Philadelphia,* 92 F.R.D. 764, 765 (E.D.Pa.1981)). Many other Third Circuit opinions, however, have approved the use of fictitious defendants. *See Groman v. Township of Manalapan,* 47 F.3d 628 (3d Cir.1995); *Singh v. Daimler–Benz AG,* 9 F.3d 303 (3d Cir.1993); *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108 (3d Cir.1990); *Patterson v.*

*FBI,* 893 F.2d 595 (3d Cir.1990); *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38 (3d Cir.1988); *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers,* 855 F.2d 1080 (3d Cir.1988). Consequently, I will follow the prevailing trend in this circuit and permit the use of fictitious defendants, at least until the plaintiffs have had a reasonable opportunity to conduct discovery to identify the fictitiously named defendants.

9. While Plaintiffs did benefit from some early discovery, this discovery was limited to interviews of inmates and access to inmate medical records. Full-blown discovery will provide Plaintiffs with the opportunity to depose prison employees to determine who participated in the alleged assaults.

Upon closer examination, however, I conclude that the PLRA only applies to Plaintiffs' claims alleging unconstitutional prison conditions and threats of retaliation. Additionally, for the reasons set forth below, I conclude that the PLRA does not require exhaustion where the "available" administrative remedies would not provide the relief sought by the Plaintiffs in their Complaint.

■ Effective April, 1996, the PLRA amended 42 U.S.C. § 1997e(a) to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA amended this section to make the exhaustion of administrative remedies mandatory, rather than discretionary. As a result, if an inmate does not exhaust his or her administrative remedies, then the court must dismiss his or her claim.

Because this section of the PLRA mandating exhaustion of available administrative remedies has been in force for less than two and a half years, its precise scope is unclear. In particular, the language of § 1997e(a) does not explicitly reveal whether the phrase "with respect to prison conditions" encompasses allegations of excessive force. Similarly, the phrase "available" administrative remedies does not indicate whether an inmate must exhaust even those administrative remedies that do not provide the relief that the inmate seeks. Specifically, the language of § 1997e(a) does not resolve whether prisoners must exhaust their available administrative remedies when they seek monetary damages and the "available" administrative remedies provide only injunctive relief. In this case, I find that the PLRA does not apply to excessive force allegations (and those allegations arising therefrom) or to claims for monetary relief in situations in which the "available" administrative remedies do not afford damages.

## 1. Excessive Force Is Not a Prison Condition

The prior version of § 1997e(a) provided, in relevant part:

[I]n any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

By comparing the previous version of § 1997e(a) with the current version of the PLRA, two changes become obvious. First, the amended version of the section contained in the PLRA deletes the language that provides the court with discretion to continue the case pending the exhaustion of administrative remedies. Consequently, the exhaustion requirement is now mandatory, rather than discretionary. At the same time, the amended § 1997e(a) also adds language limiting the scope of the exhaustion requirement only to those actions "brought with respect to prison conditions."

■ This section of the PLRA, however, does not contain a definition of "prison conditions." In attempting to interpret this section of the PLRA, two courts have applied the definition found in 18 U.S.C. § 3626(g)(2), which was enacted at the same time as part of the PLRA. *See Hollimon v. DeTella,* 6 F.Supp.2d 968, 969 (N.D.Ill.1998) (strip search for the purpose of humiliation); *Morgan v. Arizona Dep't of Corrections,* 976 F.Supp. 892, 895–96 (D.Ariz.1997) (assault on inmate by fellow prisoners). Section 3626(g)(2) provides:

[T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison . . .

18 U.S.C. § 3626(g)(2). This definition suggests an overly broad category, including any action on the part of a prison guard or official that touches the life of an inmate. For the reasons that follow, I find that this definition

does not encompass intentional physical attacks, with accompanying threats by guards to inmates.

█ Congress amended § 1997e, reducing its scope from "any action" brought by an inmate to only those actions "with respect to prison conditions." "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). In enacting this change, Congress must have meant to reduce the scope of § 1997e(a), otherwise the limiting language would not have a "real and substantial effect."

The legislative history of the statute reinforces an interpretation of the phrase "prison conditions" to exclude the use of excessive force. Congress amended this section to "help bring relief to a civil justice system overburdened by *frivolous* prisoner lawsuits." 141 Cong. Rec. S14,408–01, *S14,418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch) (emphasis added). Senator Orrin Hatch, one of the sponsors of the Act, intended that the PLRA would "help restore balance to prison conditions litigation and [ ] ensure that Federal Court Orders are limited to remedying actual violations of prisoners' rights." *Id.; see also* 142 Cong. Rec. H4311–01, *H4327 (daily ed. May 1, 1996) (statement of Rep. McCollum) ("[T]he underlying principle of [the PLRA] has to do with exhausting administrative remedies, and is going to make it very much more difficult for prisoners to bring up *frivolous* lawsuits in the first place and make it a lot easier for judges to throw them out.") (emphasis added). Rep. Canady of Florida explained that the amendment of § 1997e(a) was meant to

significantly curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.... There is no reason that, as happened in an actual case, a prisoner should bring a lawsuit in Federal court because he requested chunky peanut butter for a sandwich and he was given creamy instead.

141 Cong. Rec. H1472–06, *H1480 (daily ed. Feb. 9, 1995) (statement of Rep. Canady).

Another one of the sponsors of the PLRA, Senator Dole, reiterated this sentiment:

Unfortunately, the litigation explosion now plaguing our country does not stop at the prison gate. According to Enterprise Institute scholar Walter Berns, the number of "due-process and cruel and unusual punishment" complaints filed by prisoners has grown astronomically-from 6,600 in 1975 to more than 39,000 in 1994. These suits can involve such grievances as insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and yes, being served chunky peanut butter instead of the creamy variety. The list goes on and on.

141 Cong. Rec. S14,408–01, *S14,413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole). Clearly, Congress intended to limit frivolous prisoner suits, such as the one about peanut butter, arising from prison conditions, but did not intend to reach a claim involving the systematic use of excessive physical force.

The one court that has addressed a claim of excessive force by prison guards under the new version of § 1997e(a) also reached the conclusion that "assault claims are not claims that challenge the conditions of a prisoner's confinement." *Rodriguez v. Berbary*, 992 F.Supp. 592, 593 (W.D.N.Y.1998); *cf. Hollimon v. DeTella*, 6 F.Supp.2d 968, 969 (N.D.Ill.1998) (finding that a strip search performed by prison guards for the sole purpose of humiliating an inmate constituted a prison condition under the definition in 18 U.S.C. § 3626(g)(2)); *Morgan v. Arizona Dep't of Corrections*, 976 F.Supp. 892, 895–96 (D.Ariz., 1997) (holding that a prisoner's claim that the guards failed to protect him from an assault by other prisoners did constitute a prison condition under the definition in 18 U.S.C. § 3626(g)(2)). In *Rodriguez*, the court held that "assault claims are distinguishable from claims regarding whether adequate food, clothing, shelter and/or medical care was received." *Rodriguez*, 992 F.Supp. at 593.

The distinction between excessive force and prison conditions is not novel to our federal jurisprudence. The Supreme Court, in two separate opinions addressing Eighth

Amendment violations, has embraced the dis-. tinction between excessive force and prison conditions.[10] First, in *Hudson v. McMillian*, the Supreme Court recognized a different standard for analyzing Eighth Amendment violations resulting from poor prison conditions as opposed to the use of excessive force. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In that case, the Supreme Court stated:

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," [*Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)], "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." [*Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)].... In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.

*Hudson*, 503 U.S. at 8–9, 112 S.Ct. 995 (citations omitted). The Supreme Court reiterated this distinction in *Farmer v. Brennan:*

> In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example use excessive physical force against prisoners.... The Amendment also imposes duties on these official, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting

*Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

Finally, "[i]n the absence of [a] definition within the statute, statutory terms are to be construed in accordance with their ordinary meaning." *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir.1998) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995)). A common sense interpretation of the phrase "prison conditions" in § 1997e(a) suggests that it does not include the use of excessive physical force. Simply put, assault is not an "effect." It is an intentional act. Accordingly, I find that the requirement in § 1997e(a) that a plaintiff exhaust all available administrative remedies before filing suit does not apply to allegations of excessive use of physical force.

Further, I hold that § 1997e(a) also does not apply to the allegations of a conspiracy to use excessive force to intimidate the inmates, *see* Second Amended Compl. ¶ 124, and to the threats of further physical violence, by which the guards allegedly intended to dissuade prisoners from seeking medical treatment or from pleading not guilty to disciplinary charges. *See* Second Amended Compl., Count II. The conduct suggested by these allegations arises out of the alleged use of excessive force and was allegedly perpetrated by Bayside guards and officials to facilitate further acts of violence and to conceal their assaultive conduct. According to Plaintiffs' Second Amended Complaint, Bayside guards threatened prisoners to induce them into pleading guilty to false disciplinary charges [11] and into not seeking medical treatment so as to conceal the excessive and repeated use of physical abuse. The alleged threats and conspiracy, therefore, enabled the Bayside guards and officials to engage in further violence.

Moreover, the Supreme Court considers allegations of Eighth Amendment violations in combination to the extent that the combi-

---

**10.** Moving Defendants have also acknowledged this distinction. They state: "Plaintiffs' allegations can be divided into two categories, use of force and prison conditions." Moving Defendants' Brief at 3 (footnote omitted).

**11.** As discussed in Section D, below, I make a distinction between the threats to plead guilty and the filing of false disciplinary charges. The filing of false disciplinary charges does not constitute a cognizable claim under § 1983 and, therefore, must be dismissed for failure to state a claim.

nation of activities deprives inmates of one particular right. *See Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need." *Id.* Thus, the physical attacks, the threats, and the conspiracy had "a mutually enforcing effect that produces the deprivation" of the right to be free from cruel and unusual punishment.[12]

By contrast, the substandard, unconstitutional prison conditions allegedly imposed by the defendants did not facilitate or exacerbate the alleged use of excessive force. In other words, the state of prison conditions did not reinforce the physical assaults, but existed, if at all, concurrently. "To say that some prison conditions may interact . . . is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes." *See id.* at 305, 111 S.Ct. 2321. Substandard prison conditions may make for a miserable existence,[13] but they do not contribute to physical violence.

█ Accordingly, I hold that § 1997e(a) does not apply to the allegations of the use of excessive force (part of Count I), the threats of violence (all of Count II), and the conspiracy to terrorize inmates with threats and violence (all of Count IV, except with reference to the retaliation claim). It does, however, apply to all of the other allegations, namely, those about poor prison conditions (the remainder of Count I), false disciplinary charges (all of Count III), and the retaliation claims (all of Count V).

### 2. "Available Remedies" Refers Only to Those Remedies That will Provide the Relief Sought

█ Congress amended § 1997e(a) by deleting the reference to "plain, speedy, and effective administrative remedies" and instead inserted the language "such administrative remedies as are available." *Compare* 42 U.S.C. § 1997e(a) (1994) *with* 42 U.S.C. § 1997e(a) (1994 & Supp. II 1996). Courts have disagreed about whether this change means that a prisoner must exhaust all available administrative remedies even when those remedies do not provide the relief that the prisoner seeks. *Compare Garrett v. Hawk,* 127 F.3d 1263, 1267 (10th Cir.1997) ("[A] prisoner can only exhaust administrative remedies that are actually available.") *and Freeman v. Godinez,* 996 F.Supp. 822, 825 (N.D.Ill.1998) ("Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e[ (a) ], the remedy must be available through the administrative process or it need not be utilized.") *and Lacey v. C.S.P. Solano Medical Staff,* 990 F.Supp. 1199, 1205 (E.D.Ca.1997) (holding that when "an institutional administrative procedure is not empowered to achieve the end sought by plaintiff . . . it is not an 'available' administrative remedy within the ordinary meaning of that word") *with Spence v. Mendoza,* 993 F.Supp. 785, 787–88 (E.D.Cal.1998) (holding that the deletion of the word "effective" from § 1997e(a) requires courts to disregard whether state administrative remedies are capable of achieving particular ends). In particular, where a prisoner seeks monetary relief, courts disagree about whether that prisoner must still engage in the hollow gesture of petitioning an administrative body for a remedy that it cannot provide.

**12.** The threats allegedly made by Bayside guards to deter inmates from seeking medical treatment and from pleading innocent in disciplinary hearings (Count II of the First and Second Amended Complaints) must be distinguished from those threats made in retribution for the filing of this lawsuit (Count V of the proposed Second Amended Complaint). The threats of retribution do not emanate from the many assaults, which Plaintiffs allege the defendants perpetrated or condoned. By contrast, the threats described in Count II facilitated the perpetration of physical violence. I conclude in Section 3, below, that Plaintiffs

have failed to exhaust their administrative remedies as to these allegations and, therefore, I must grant Moving Defendants' motion to dismiss for failure to state a claim upon which relief can be granted as to these claims. In addition, as set forth below in Section C, Plaintiffs' allegations of false disciplinary charges fail to state a claim under § 1983.

**13.** "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

I find that "available administrative remedy" means that the particular relief sought can be obtained through the administrative process. "Available remedy" cannot mean that some procedure is available, the use of which would be but an empty formality. Such a construction would be contrary to a commonsense interpretation of the statutory language. *See Asgrow Seed Co. v. Winterboer,* 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."). "The statute requires exhaustion of 'available administrative remedies,' not 'any institutional grievance procedure.'" *Harris v. Mugarrab,* No. 97–C–3587, 1998 WL 246450, at *3 (N.D.Ill. May 1, 1998). Any other interpretation would compel the conclusion that "Congress intended to erect meaningless barriers to suit." *Id.* Moreover, this interpretation of § 1997e(a) is consistent with the reasoning of the majority of courts that have addressed the issue. *See, e.g., Garrett,* 127 F.3d at 1267; *Harris,* 1998 WL 246450, at *3; *Jackson v. DeTella,* 998 F.Supp. 901, 904 (N.D.Ill. Mar.16, 1998) ("Since no available remedy existed through the grievance process, Jackson was not required to exhaust his administrative remedies before filing the case at bar."); *Freeman,* 996 F.Supp. at 825; *Russo v. Palmer,* 990 F.Supp. 1047, 1050 (N.D.Ill.1998) ("Because Russo seeks monetary damages and the prison's administrate remedies do not provide any relief for such requests, there was no administrative remedy 'available' for Russo to exhaust."); *Lacey,* 990 F.Supp. at 1205.

■ In this case, Plaintiffs seek both monetary and injunctive relief. *See* Second Amended Compl. The New Jersey Inmate Grievance Procedure makes no mention of any monetary remedy. *See* N.J. Admin. Code tit. 10A, § 31–14.4 (1998). It states: "A written inmate grievance procedure shall be afforded to all inmates which shall include at least one level of appeal." *Id.* Further, Moving Defendants, represented by the Attorney General of New Jersey, have not contended that a monetary remedy is available through the administrative grievance procedures that are provided to New Jersey state prison inmates. Consequently, I must conclude that monetary relief is not available to Plaintiffs under New Jersey's Inmate Grievance Procedures.

Because monetary relief was not an "available" remedy, the exhaustion requirement under § 1997e(a) does not apply to Plaintiffs' claims for compensatory and punitive damages. According to the Second Amended Complaint, Plaintiffs do seek injunctive remedies for: (1) the use of excessive force, for which they request monitoring of SOG operations (Count I); (2) threats to dissuade physically injured inmates from seeking medical treatment (Count II), for which Plaintiffs request the appointment of an outside medical doctor and other injunctive relief; (3) false disciplinary charges (Count III), for which they seek expungement of prisoners' disciplinary records and sound recording of all further disciplinary hearings; and (4) threats of retaliation (Count V), for which they seek an order prohibiting Bayside prison guards and officials from discussing this lawsuit with Plaintiffs. For these forms of relief, Plaintiffs did have available administrative remedies, but I have already determined that most of these allegations fall outside the scope of § 1997e(a).[14] As a result, the only claims to which § 1997e(a) does apply are the claims of false disciplinary charges (Count III) and retaliation (Count V).

### 3. Exhaustion of Administrative Remedies on Counts III and V

■ "[P]risoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies." *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998). I must dismiss without prejudice any claim in Counts III and V, for which Plaintiffs have not alleged exhaustion of remedies. The proposed Second Amended Complaint indicates that only two plaintiffs, Jason Phillips

---

**14.** In Section 1, *supra,* I found that § 1997e(a) does not apply to the allegations of the use of excessive force, threats of violence to deter inmates from seeking medical treatment, and the conspiracy claim.

and Adrian Torres, appealed the imposition of disciplinary charges. *See* Second Amended Compl. ¶¶ 31 (Phillips), 60 (Torres). Further, there are no facts alleged in either the First Amended Complaint or the Second Amended Complaint that suggest that any of the plaintiffs filed any grievances about the threats of retaliation. Accordingly, I find that only Plaintiffs, Phillips and Torres, have exhausted their available administrative remedies on Count III and none of the Plaintiffs has exhausted their remedies on Count V. As a result, I must grant the Moving Defendants' motion to dismiss for failure to state a claim as to Count III, with the exception of Plaintiffs, Phillips and Torres,[15] and deny Plaintiffs' motion for leave to file an amended complaint, with respect to Count V of the proposed Second Amended Complaint, as to all of the Plaintiffs.

### C. Threats in Retaliation for the Filing of This Suit

■ In Count V of their Second Amended Complaint, Plaintiffs allege that "various defendant Corrections Officers have communicated threats of physical harm to members of the inmate population who have met with plaintiffs' counsel." Second Amended Compl. ¶ 129. Even if this Court were to consider this claim of retaliatory threats as falling outside § 1997e(a)'s requirement of exhaustion of administrative remedies, such an allegation does not state a claim under § 1983.[16]

Mere threats do not deprive the Plaintiffs of any constitutional right. "Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." *Lamar v. Steele*, 698 F.2d 1286, 1286 (5th Cir.1983) (per curiam); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir.1987) (hold-

ing that threats to deter prisoner from "pursuing legal redress" is insufficient to state a claim under § 1983 unless the prisoner was actually deprived access to the court). "Only harassment and threats coupled with conduct implicating the Eighth Amendment's proscription against cruel and unusual punishment . . . may present a claim under § 1983." *Grant v. Fernandez*, No. 96–1788, 1997 WL 118257, at *2 (N.D.Cal. Mar.5, 1997). Thus, unless an inmate can "allege a specific instance in which he was actually denied access to the courts," *Wilson v. Chesney*, No. 94–4303, 1995 WL 295351, at *4 (E.D.Pa. May 1, 1995), threats alone do not rise to the level of a constitutional deprivation and the inmate cannot make a § 1983 claim. Because Plaintiffs have filed and are proceeding with the prosecution of this case, they have not been deprived of access to the courts. Accordingly, I must deny Plaintiffs' motion for leave to file an amended complaint with respect to Count V of the proposed Second Amended Complaint.

### D. False Disciplinary Charges

■ In Count III of their Second Amended Complaint, Plaintiffs claim that "the defendants have fabricated disciplinary or misconduct charges against numerous inmates, in order to create the appearance of a justification for certain [incidents] of the physical mistreatment inflicted upon the plaintiffs." Second Amended Compl. ¶ 116. Plaintiffs, Phillips and Torres, have exhausted their administrative remedies, by appealing the imposition of those sanctions, which resulted from these allegedly false charges. For these two plaintiffs, I will consider Moving Defendants' argument that Plaintiffs' allegations with respect to the filing of false disciplinary charges fail to state a claim under 42

---

**15.** In Section D, *infra*, I find that Plaintiff, Torres, has failed to state a claim cognizable under 42 U.S.C. § 1983, and, therefore, his claims as to Count III must also be dismissed.

**16.** Failure to exhaust administrative remedies under § 1997e(a) is not a jurisdictional bar to bringing suit in federal court. *See Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir.1998) (finding that § 1997e does not impose exhaustion of remedies as a prerequisite to jurisdiction); *Wright v.*

*Morris*, 111 F.3d 414, 421 (6th Cir.1997) (determining that § 1997e does not constitute a jurisdictional bar), *cert. denied*, —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). Therefore, this Court is not engaging in the improper practice of "assuming" jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (rejecting the doctrine of "hypothetical" or "assumed" jurisdiction).

U.S.C. § 1983. *See* Defendants' Brief at 10–11.

The filing of false disciplinary charges does not itself deprive an inmate of a constitutional right. *See Freeman v. Rideout,* 808 F.2d 949, 952–53 (2d Cir.1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the prisoner "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Hanrahan v. Lane,* 747 F.2d 1137, 1140 (7th Cir.1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), then the prisoner has not suffered a constitutional violation). "So long as an inmate receives due process, ... the filing of false disciplinary charges against him raises no constitutional cause of action." *Creter v. Arvonio,* No. 92–4493, 1993 WL 306425, at *7 (D.N.J. Aug.5, 1993); *Duncan v. Neas,* No. 86–109, 1988 WL 91571, at *1 (D.N.J. Aug.30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided"). To the extent that the inmates were induced into falsely pleading guilty or intimidated during the disciplinary hearings, this conduct deprives Plaintiffs of their due process rights and, therefore, is a cognizable claim under § 1983. The filing of false charges alone, however, does not state a claim.

For Plaintiffs, Phillips and Wilson, the proposed Second Amended Complaint does contain allegations that these individuals were deprived of due process. *See* Second Amended Compl. ¶¶ 29 (Phillips), 37 (Wilson). Plaintiffs claim that SOG officers beat Phillips until he agreed to plead guilty to disciplinary charges. *See id.* ¶ 29. Plaintiffs also allege that Wilson "had a disciplinary hearing, with three officers, in full riot gear,

in the room surrounding and intimidating him." *Id.* ¶ 37. As I found in Section B.3., *supra,* however, Wilson has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a).

Further, for all of the other named plaintiffs, the Second Amended Complaint does not contain allegations that the defendants deprived those allegedly falsely accused of their due process rights. The hearing procedures offered these other Plaintiffs the opportunity to defend against the allegedly false charges. *See, e.g.,* Second Amended Compl. ¶¶ 49, 59. Consequently, I must grant the Moving Defendants' motion to dismiss for failure to state a claim on Count III as to all of the Plaintiffs, except with respect to Plaintiff, Phillips.

### E. Respondeat Superior Liability

■ Regarding Defendants, Faunce and Fauver, Moving Defendants argue that Plaintiffs' claims must be dismissed, because "[s]upervisory liability under section 1983 cannot be predicated upon a theory of respondeat superior." Moving Defendants' Brief at 33. This is a correct statement of the law. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988).

■ Nonetheless, in their Second Amended Complaint, Plaintiffs do claim that both Fauver and Faunce had personal knowledge of and participated in the events described. *See* Second Amended Compl. ¶¶ 82, 85. In particular, Plaintiffs allege that Defendant Fauver received notice of the incidents at Bayside via the prison's Ombudsman and failed to take appropriate measures in response.[17] *See id.* ¶ 82. According to Plaintiffs, Faunce also received various complaints and did not respond. For example, Plaintiff Tony "Bacon validly complained to

---

**17.** Plaintiffs may no longer sue Defendant Fauver in his official capacity, because Defendant Fauver tendered his resignation on or about November 6, 1997, effective, approximately, December 31, 1997. *See Rouse v. Plantier,* 987 F.Supp.

302, 304 n. 5 (D.N.J.1997) (Orlofsky, J.) ("The Court is informed that Fauver tendered his resignation on or about November 6, 1997, effective, approximately, December 31, 1997.").

defendant Faunce ... about the conditions and the behavior of SOG." *Id.* ¶ 11; *see also id.* ¶ 31 (noting that Plaintiff Phillips wrote to Faunce to complain about an allegedly false disciplinary charge), ¶ 60 (stating that Plaintiff Adrian Torres sent a letter to Faunce to complain). Plaintiffs also contend that Faunce personally witnessed the conduct of the Bayside guards and also did not respond. *See, e.g., id.* ¶¶ 51 (claiming that Plaintiff Brown saw Faunce at Bayside and asked Faunce if Brown "was supposed to be there without clothes and bedding"). In addition, as the person in charge of developing policy for the prison, Defendant Faunce may have been involved in developing the official response to Officer Baker's murder. *See id.* ¶ 85. Simply put, Plaintiffs have offered sufficient, although minimal, allegations of personal participation by both Faunce and Fauver to survive a motion to dismiss for failure to state a claim.

### F. Culpable State of Mind Necessary for Prison Conditions Claim [18]

▮ Moving Defendants argue that "Plaintiffs' 'conditions' claim is not cognizable under the subjective element of the [Supreme Court's] Eighth Amendment [analysis] because plaintiffs have not alleged that defendants imposed the alleged conditions under the required wanton state of mind." [19] Moving Defendants' Brief at 30. I disagree.

In *Wilson v. Seiter*, the Supreme Court held that prisoners making claims under § 1983 about prison conditions must allege that the responsible government officials acted with deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" is more than mere "inadvertence or error in good faith." *Id.* at 299, 111 S.Ct. 2321. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v.*

*Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Rouse v. Plantier,* 987 F.Supp. 302, 307 (D.N.J.1997) (Orlofsky, J.) (same).

Plaintiffs charge Defendants with more than just "knowledge of a substantial risk of serious harm," but with the intent to evoke that serious harm. In their Second Amended Complaint, Plaintiffs claim that the defendants committed "the unconstitutional acts [described in the Second Amended Complaint] to maintain [an] atmosphere of terror and intimidation." Second Amended Compl. ¶ 123. In other words, Plaintiffs allege that defendants intentionally imposed substandard conditions as part of an overall scheme to terrorize and intimidate the inmates.

▮ With respect to Defendants, Faunce and Fauver, Plaintiffs claim that these officials had actual notice of the use of excessive force at Bayside and failed to respond. *See* Section E, *supra*. This allegation also suggests that Defendants, Fauver and Faunce, had knowledge of the operative events and failed to act. Thus, according to the Second Amended Complaint, these two defendants acted with deliberate indifference. Accordingly, as to the argument that Plaintiffs failed to allege the appropriate level of intent against Faunce and Fauver, I must deny Moving Defendants' motion to dismiss as to the part of Count I that addresses prison conditions.

### G. Qualified Immunity

Moving Defendants claim that they are entitled to a defense of qualified immunity as to all of Plaintiffs' allegations regarding prison conditions. *See* Moving Defendants' Brief at 30. I agree.

"[O]fficials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct

---

**18.** Plaintiffs' allegations of unconstitutional prison conditions in Count I of the First and Second Amended Complaint are not subject to the exhaustion requirement, because Plaintiffs seek only monetary damages for these allegations. *See* Section A.2., *supra*.

**19.** To prove that a government official's acts or omission constituted a violation of the Eighth

Amendment, a plaintiff must demonstrate two elements: (1) the government official subjectively acted with "deliberate indifference"; and (2) the government official's acts or omission objectively resulted in the denial of a basic human necessity. *See Rouse v. Plantier,* 987 F.Supp. 302, 307 (D.N.J.1997) (Orlofsky, J.).

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). By only holding government officials responsible for obvious violations of constitutional rights, qualified immunity "seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability.'" *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (quoting *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Thus, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (quoting *Harlow,* 457 U.S. at 818, 819, 102 S.Ct. 2727).)

For example, in *Johnson v. Horn,* two inmates sued prison officials, alleging the prison's failure to provide kosher meals violated the United States Constitution. *See Johnson v. Horn,* 150 F.3d 276 (3d Cir.1998). The Third Circuit affirmed the District Court's finding that, because "[o]nly two courts of appeals have recognized the right of a Jewish inmate to receive a kosher diet," prison officials had not violated clearly established law and, therefore, were entitled to qualified immunity. *Id.* at 286.

In the context of allegations of unconstitutional prison conditions, the Supreme Court has held that courts must provide prison officials and legislatures with substantial leeway in balancing the conflicting goals that plague the penal system. *See Rhodes v. Chapman,* 452 U.S. 337, 352, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In *Rhodes v. Chapman,* the Supreme Court stated:

> In assessing claims that conditions of confinement are cruel and unusual, court must bear in mind that their inquiries "spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." [*Bell v.*

*Wolfish,* 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ] ... [C]ourts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system: to punish justly, to deter future crime, and to return imprisoned persons to society with an improved chan[c]e of being useful, law-abiding citizens.

*Id.; see also Bell,* 441 U.S. at 547, 99 S.Ct. 1861 ("Prison official must be free to take appropriate action to ensure the safety of inmates and corrections personnel...."). The Third Circuit embraced this sentiment in *Gittlemacker v. Prasse,* noting that "the federal courts have been understandably reluctant to intervene in matters of state prison administration, recognizing that a wide latitude for judgment and discretion must be extended to prison officials." *Gittlemacker v. Prasse,* 428 F.2d 1, 4 (3d Cir.1970) (discussing, in particular, the balance between First Amendment rights and penalogical interests).

In recognition of the need to provide prison officials with latitude in operating penal institutions, the Supreme Court has imposed a substantial burden on plaintiffs who allege unconstitutional prison conditions, by requiring them to demonstrate that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Rouse v. Plantier,* 987 F.Supp. 302, 307 (D.N.J. 1997) (Orlofsky, J.).

In this case, the Plaintiffs have not met this burden. *See* Second Amended Compl. ¶¶ 101–108. Plaintiffs do not allege that the defendants knew or should have known that the alleged imposition of the conditions described in the Second Amended Complaint was unconstitutional. Moreover, in light of the "clearly established" law that affords prison administrators considerable discretion in dealing with prison conditions, I cannot say, as a matter of law, that the defendants should have or could have known that the "prison conditions" allegedly im-

posed upon Plaintiffs were unconstitutional. Therefore, I find that Moving Defendants have qualified immunity as to the "prison conditions" allegations in Count I of the Second Amended Complaint. Accordingly, I shall grant Moving Defendants' motion to dismiss for failure to state a claim on that part of Count I that alleges unconstitutional, inhumane prison conditions.

## IV. CONCLUSION

For the reasons set forth above, the motion of Defendants, William Fauver, Scott Faunce, Robert Ziegler, Edward Delbow, Luther Weldin, and Lance Meehan, to partially dismiss for failure to state a claim is granted in part and denied in part. I will grant the Moving Defendants' motion to dismiss the First and Second Amended Complaints on the "prison conditions" claim set forth in Count I, on the ground that Moving Defendants' have qualified immunity precluding this claim. I will also grant Moving Defendants' motion to dismiss all of Count III, except with respect to Plaintiff, Phillips and Wilson, because Plaintiffs' claim that the defendants filed false disciplinary charges against them fails to state a claim under § 1983 in the absence of allegations of procedural irregularities. I will grant the motion to dismiss as to Plaintiff, Wilson, however, for failure to exhaust available administrative remedies. I will deny the remainder of the Moving Defendants' motion to partially dismiss for failure to state a claim. In addition, the cross-motion of Plaintiffs, Laverna White, Tony Bacon, Andrew Gordon, Jeffrey Nosal, James Delbueno, Kenneth Scullion, Mark Green, Jason Phillips, John Wilson, Tom Branigan, Frederick Brown, Adrian Torres, Alfonse Torres, Sergio Perez, Vermonie Pierce, Michael Shontz, James Golden III, Samuel Gomez and Carlos Martinez, for leave to file a Second Amended Complaint is granted, except with respect to the proposed Count V. The Plaintiffs' motion for leave to file a second amended complaint is denied without prejudice as to Count V, because Plaintiffs' have failed to exhaust their available administrative remedies as required by 42 U.S.C. § 1997e(a) with respect to their allegations about threats of retaliation. The Plaintiffs' motion for leave to file a second

amended complaint is also denied without prejudice only as to Plaintiff, Wilson, due to his failure to exhaust his administrative remedies with respect to his allegations that Defendants filed false disciplinary charges.

The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on the motion of Defendants, William Fauver, Scott Faunce, Robert Ziegler, Edward Delbow, Luther Weldin, and Lance Meehan to partially dismiss for failure to state a claim, Peter Verniero, Esq., Attorney General of New Jersey, Ronald L. Bollheimer, Esq., and Gregory Spellmeyer, Esq., Deputies Attorney General, appearing on behalf of Defendants, William Fauver, Scott Faunce, Robert Ziegler, Edward Delbow, Luther Weldin, and Lance Meehan, and on the cross-motion of Plaintiffs, Laverna White, Tony Bacon, Andrew Gordon, Jeffrey Nosal, James Delbueno, Kenneth Scullion, Mark Green, Jason Phillips, John Wilson, Tom Branigan, Frederick Brown, Adrian Torres, Alfonse Torres, Sergio Perez, Vermonie Pierce, Michael Shontz, James Golden III, Samuel Gomez and Carlos Martinez, for leave to file a second amended complaint, Jaime M. Kaigh, Esq. and Rodney D. Ray, Esq., of Kaigh & Ray, P.C., Paul J. Hirsh, Esq., of Whipple, Ross & Hirsh, P.A., Justin T. Loughry, Esq., of Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, P.C., and Audrey J. Bomse, Esq., appearing on behalf of Plaintiffs; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 29th day of September, 1998, hereby ORDERED that:

1. The motion of Defendants to partially dismiss for failure to state a claim is GRANTED in part and DENIED in part;

2. Defendants' motion to dismiss the First and Second Amended Complaints on the "prison conditions" claim alleged in Count I is GRANTED, on the ground

that Moving Defendants' have qualified immunity which bars this claim;

3. Defendants' motion to dismiss Count III, except with respect to Plaintiffs, Phillips and Wilson, is GRANTED, on the ground that Plaintiffs' claim that the defendants filed false disciplinary charges against them fails to state a claim under § 1983 in the absence of allegations of procedural irregularities;

4. Defendants' motion to dismiss Count III, with respect to Plaintiff, Wilson, is Granted, on the ground that the Plaintiff, Wilson, failed to exhaust his available administrative remedies, and, accordingly, the dismissal is without prejudice;

5. The remainder of Defendants' motion to partially dismiss is DENIED;

6. The cross-motion of Plaintiffs for leave to file a Second Amended Complaint is GRANTED, except with respect to the proposed Count V;

7. Plaintiffs' cross-motion for leave to file a Second Amended Complaint is DENIED without prejudice as to Count V, for failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a);

8. Defendants' motion to strike Plaintiffs' reply brief in opposition to Defendants' motion to dismiss is DENIED; and

9. Those Defendants, who have not already done so, shall file an answer within ten (10) days after receiving notice of this order in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).