

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2002

# Ray v. Kertes

Precedential or Non-Precedential:

Docket No. 99-3446

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Ray v. Kertes" (2002). *2002 Decisions*. Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 3, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3446

FREDERICK T. RAY

v.

C.O. KERTES; C.O. STOLZ; C.O. REED;
C.O. ROGERS; LT. NASH; LT. HICKS;
LT. A. SMITH; CAPT. ALMANSHIFER;
R. NORRIS; TIM LAUNTZ

FREDERICK RAY,
        Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 99-cv-00396)
District Judge: Hon. Malcolm Muir

Argued September 20, 2001

Before: SLOVITER, NYGAARD and McKEE, Circuit Judges

(Filed: April 3, 2002)

        Jon Romberg
        Craig T. Moran (Argued)
        John P. Campbell (Argued)
        Seton Hall Law School
        Newark, NJ 07102

         Attorneys for Appellant

        D. Michael Fisher
         Attorney General
        J. Bart DeLone (Argued)
         Deputy Attorney General
        Calvin R. Koons
         Senior Deputy Attorney General
        John G. Knorr, III
         Chief Deputy Attorney General
         Chief, Appellate Litigation Section
        Office of Attorney General
        Appellate Litigation Section
        Harrisburg, PA l7l20

         Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Frederick Ray, a former inmate in the Pennsylvania state prison system, appeals from the order of the District Court dismissing sua sponte Ray's complaint against prison officials filed pursuant to 42 U.S.C. S 1983 (2001).1 The District Court dismissed Ray's complaint based on its determination that Ray had not "demonstrated" that he had exhausted his administrative remedies. Section 1997e(a) of

---

1. Ray's notice of appeal was filed pro se. This court sought representation for Ray from Professor Jon Romberg, Associate Director of the Center for Social Justice at Seton Hall University School of Law. Ray's appeal was handled by John P. Campbell and Craig T. Moran, who were at the time of briefing students at Seton Hall Law School under the supervision of Professor Romberg. Mr. Campbell and Mr. Moran had graduated by the time they argued before us, both capably, and we extend our appreciation to them and to Professor Romberg.

2

the Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. S 1997e(a) (2001).

Ray argues that the District Court erred in dismissing his complaint for two reasons. His principal argument is that the PLRA's exhaustion requirement is an affirmative defense, to be alleged and proved by the defendants. This is a question of first impression for this court. Other courts of appeals have divided on this issue. Ray's alternate argument is that even if we were to decide that the PLRA exhaustion requirement is not an affirmative defense, the District Court erred by imposing an improperly heightened pleading standard that required Ray not only to plead but also to prove his exhaustion in the complaint.

I.

FACTS AND PROCEDURAL HISTORY

In his complaint, Ray alleges that while he was a prisoner at the Pennsylvania State Correctional Institution at Huntingdon, he was twice assaulted by officers, who retaliated by filing groundless misconduct charges against him when he told them he would sue. Ray, while still a prisoner and using a printed form complaint provided to prisoners, filed a S 1983 complaint pro se in the District Court for the Middle District of Pennsylvania against the officers who allegedly assaulted him and other prison officials. In his complaint, Ray alleged that various officers and certain prison procedures violated his First, Fifth, Eighth and Fourteenth Amendment rights.

On the first page of the form complaint, under a caption entitled "Exhaustion of Administrative Remedies," the form asked "Is there a grievance procedure available at your institution?"; "Have you filed a grievance concerning the facts relating to the complaint?"; and "Is the grievance process completed?" Ray checked "Yes" in response to all three questions. App. at 4.

Shortly after Ray filed his complaint, the District Court referred it to a Magistrate Judge. The Magistrate Judge filed a report and recommendation, recommending dismissal for failure to exhaust administrative remedies. According to the Magistrate Judge, "[W]hile the plaintiff alleges that he filed various grievances with respect to the claims which he now raises in his complaint, there is no indication from the plaintiff's complaint that he took any further action to properly exhaust his administrative remedies." Supp. at 7.

Ray filed objections to the Magistrate Judge's report, alleging that he had asserted the claims of assaults by prison guards as defenses to the misconduct charges made against him which charged him with a number of violations of prison rules. Those misconduct charges stemmed from the same altercations that are the subject of hisS 1983 claims.

The misconduct charges brought against Ray were brought under Pennsylvania Department of Corrections' Inmate Disciplinary and Restricted Housing Procedures, DC-ADM 801 (effective Sept. 20, 1994) ("Inmate Disciplinary Procedures"), Supp. App. at 1-11, which govern inmate violations of prison rules. The Inmate Disciplinary Procedures are distinct from the Consolidated Inmate Grievance Review System, DC-ADM 804 (effective Oct. 20, 1994) ("Inmate Grievance System"), Supp. at 45, which is designed to address inmate-initiated grievances. 2 In his objections to the Magistrate Judge's Report, Ray asserted that grievances may not be filed for claims related to disciplinary proceedings. App. at 16-17.

In the disciplinary proceeding against Ray, a hearing examiner had dismissed all of the charges save one. The Inmate Disciplinary Procedures provide that "[n]o appeals from a finding of not guilty are permitted." DC-ADM 801 VI(I)(1)(b), Supp. App. at 8. It is unclear whether prison officials interpret this clause to permit appeals from dismissals where no culpability determination is made, such as the dismissed misconduct charges against Ray.

---

2. Both the Inmate Disciplinary Procedures and the Inmate Grievance System have since been modified.

Ray attached to his objections to the Magistrate Judge's

Report handwritten copies of a number of the misconduct charges, along with the letter from the Chief Hearing Examiner denying Ray's appeal, which constituted the final administrative disposition of Ray's appeal of the one guilty charge. That letter notes, "I [, the Chief Hearing Examiner,] have reviewed the entire record of these misconducts; including the misconduct report, the hearing report and relevant documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and his response." App. at 23. This litany of appeals precisely tracks the full panoply of available administrative appeals provided for by the Inmate Disciplinary Procedures. The Commonwealth does not argue otherwise.

On May 3, 1999, before the defendants were served, the District Court dismissed Ray's complaint based on its assessment that Ray had not demonstrated exhaustion of administrative remedies.3 The District Court stated that Ray had "not attached copies of [his various] grievances to his objections [to the Magistrate Judge's report]." Supp. at 3. The District Court also observed that Ray had not set forth the specific steps that he had taken to exhaust administrative remedies and concluded by noting,"[A]ny appeal from this order will be deemed frivolous, without probable cause and not taken in good faith." Supp. at 4.

II.

JURISDICTION AND STANDARD OF REVIEW

The District Court dismissed Ray's complaint without prejudice. Appeal from a dismissal without prejudice is permitted under 28 U.S.C. S 1291 when a plaintiff "declares his intention to stand on his complaint or when he cannot cure the defect in his complaint." Booth v. Churner, 206 F.3d 289, 293 n.3 (3d Cir. 2000) aff'd 532 U.S. 731 (2001).

_____

3. Although the defendants in the action below made no appearance before this court, the Commonwealth of Pennsylvania appeared as an amicus curiae, filing a brief in support of the District Court's decision. A deputy attorney general ably argued the case.

5

Ray states that he "intends to stand on his Complaint." Br. of Appellant at 1. He also contends that he can no longer pursue administrative remedies due to the passage of time and his release from prison. We have previously exercised jurisdiction when "both parties agree that the time is long past for [the inmate-appellant] to pursue his normal administrative remedies [preventing him from] cur[ing] the defect in his complaint on which the District Court based its dismissal." Booth, 206 F.3d at 293 n.3. Accordingly, we have jurisdiction over the appeal.

This court subjects district court decisions interpreting statutes to plenary review. Gibbs v. Cross, 160 F.3d 962,

964 (3d Cir. 1998); Moody v. Sec. Pac. Bus. Credit, Inc., 971 F.2d 1056, 1063 (3d Cir. 1992). On review of a motion to dismiss, we accept as true all factual allegations in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). The availability of administrative remedies to a prisoner is a question of law. See, e.g., Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir. 1999).

III.

DISCUSSION

A. Exhaustion As An Affirmative Defense

Ray argues the District Court erred in dismissing his complaint for failure to exhaust administrative remedies and in failing to recognize that the PLRA exhaustion requirement in 42 U.S.C. S 1997e(a) is an affirmative defense. Ray does not dispute that the language of S 1997e(a) requiring administrative exhaustion of claims with respect to prison conditions applies to claims of excessive force by prison guards. If there had been any question about that, it was settled by the Supreme Court's recent decision in Porter v. Nussle, 122 S. Ct. 983 (2002), where the Court explicitly so held. Nor does Ray dispute that he must have satisfied the exhaustion requirement before he could file this action. The principal question here is not the substantive one of whether exhaustion is

6

required but the procedural issue of which party has the burden of pleading exhaustion or its absence.4

In support of his argument that failure to exhaust the prison's administrative remedies is an affirmative defense that must be pleaded and proven by the defendants in a PLRA suit, Ray relies on this court's decision in Williams v. Runyon, 130 F.3d 568 (3d Cir. 1997), a Title VII case, where we stated that "failure to exhaust administrative remedies is an affirmative defense in the nature of statute[s] of limitations." Id. at 573. Just as the imperative language in the PLRA's exhaustion requirement does not, of itself, act as a jurisdictional bar, neither does the mandatory phrasing determine the burden of pleading. For example, although statutes of limitations are very often phrased in mandatory language, see, e.g., Jackson, 89 F. Supp. 2d 48, 56-57 (D.D.C. 2000), they are quite clearly affirmative defenses, see e.g., Fed. R. Civ. Proc. 8(c) (listing the statute of limitation as an affirmative defense); Gruber v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990).

Courts in addition to this one have treated the exhaustion requirements of Title VII and the Age Discrimination in Employment Act (ADEA) as affirmative defenses. See, e.g., Wyatt v. Terhune , No. 00-16568, 2002 U.S. App. LEXIS 2217, at *19-20 (9th Cir. Feb. 12, 2002) (discussing exhaustion requirements in the Title VII and

ADEA context); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (discussing exhaustion requirement in the Title VII context); Daugherity v. Traylor Bros., Inc., 970 F.2d 348, 352-53 (7th Cir. 1992) (discussing exhaustion requirement in the ADEA context).

Ray argues that the purposes for the exhaustion requirement in Title VII suits are similar to those for the exhaustion requirement in PLRA suits and therefore the

_____

4. Neither the District Court nor the Commonwealth has suggested that the mandatory language of S 1997e(a) --"no action shall be brought" (emphasis added) -- makes the exhaustion requirement a jurisdictional one. As this court held in Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000), "[W]e agree with the clear majority of courts that 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction."

7

same pleading requirement should follow. We have, in another context, described the purposes that underlie a statutory requirement of exhaustion of administrative remedies. In Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986), we listed the following as the purposes of the exhaustion doctrine:

> 1) promotes administrative efficiency by "preventing premature interference with the agency processes,"

> 2) respects executive autonomy by allowing an agency the "opportunity to correct its own errors,"

> 3) facilitates judicial review by affording courts the benefit of the agency's experience and expertise, and

> 4) serves judicial economy by having the agency or other tribunal rather than the district court, compile the factual record.

Id. at 370 (quoting Cerro Metal Prods. v. Marshall, 620 F.2d 964, 970 (3d Cir. 1980)).

Ray notes that in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000), we ascribed similar reasons for the exhaustion requirement in the PLRA. Indeed, in Nyhuis we did discuss, as underlying the exhaustion requirement of S 1997e(a), the concern with the heavy volume of frivolous prison litigation in the federal courts and the concomitant burden of expending significant and scarce judicial resources to review and refine legal claims which are "untidy, repetitious and redolent of legal language." Id. at 74. These reasons are not dissimilar from those discussed in Heywood .

Although this is the first time we have faced how the PLRA's exhaustion requirement should be pled,5 six other

_____

5. In its brief, Pennsylvania suggests this circuit confronted the procedural characterization of the PLRA's exhaustion requirement in Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), and Nyhuis. In both Booth and Nyhuis the plaintiff-prisoners explicitly conceded their failure to exhaust administrative remedies. Booth, 206 F.3d at 293 n.2 ("Booth concedes that he did not avail himself of either the intermediate or final review process."); Nyhuis, 204 F.3d at 66 (stating plaintiff "argues that he did not avail himself of the administrative process because it could not provide him with two of the three forms of relief that he seeks in the present action"). Both dismissals would thus fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit.

circuits have considered the issue.6 The Second, Seventh, Ninth and D.C. Circuits have held that the exhaustion requirement is an affirmative defense, akin to a statute of limitations. See, e.g., Wyatt, 2002 U.S. App. LEXIS 2217, at *18; Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 1999); Perez v. Wis. Dept. of Corr. , 182 F.3d 532, 536 (7th Cir. 1999) ("Defendants may waive or forfeit reliance on S 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations."); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[U]nder the PLRA, . . . a defendant . . . may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's [exhaustion] requirement[ ]."); see also Jackson , 89 F. Supp. 2d at 56-58; 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure S 1271, at 76 (Supp. 2001); Kathryn F. Taylor, Note, The Prison Litigation Reform Act's Administrative Exhaustion Requirement: Closing the Money Damages Loophole, 78 Wash. U. L.Q. 955, 965 & n.73 (describing the different practices, and arguing in favor of characterizing exhaustion as an affirmative defense). Some dicta in the Fifth Circuit supports this view. Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) ("Rather, the amended statute imposes a requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling.").

The Commonwealth relies on the contrary position held

---

6. The district courts in this circuit are divided on whether the PLRA exhaustion requirement is an affirmative defense or some form of heightened pleading. Compare cases putting pleading burden on defendant, see, e.g., Santiago v. Fields , 170 F. Supp. 2d 453, 458 (D. Del. 2001); Gregory v. PHS, Inc., No. 00-467, 2001 U.S. Dist. LEXIS 15765, at *7-10 (D. Del. Sept. 21, 2001), with those that hold it is plaintiff's burden, see, e.g., Bensinger v. Hollandhull, No. 00-CV-5037, 2001 U.S. Dist. LEXIS 21014, at *8 (E.D. Pa. Dec. 18, 2001); Rivera v. Whitman, 161 F. Supp. 2d 337, 343 (D.N.J. 2001); Payton v. Horn, 49 F. Supp. 2d 791, 797 (E.D. Pa. 1999) (citing Brown v. Toombs, 139 F.3d 1102, 1004 (6th Cir 1998)); White v. Fauver, 19 F. Supp. 2d 305, 312 (D.N.J. 1998).

by the Sixth Circuit. In Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998), that court read the "plain mandatory language of the [PLRA] regarding exhaustion of remedies, the legislative purpose underlying the plain language, and the sound policy on which it is based, [as] requir[ing] that prisoners filing S 1983 cases involving prison conditions . . . allege and show that they have exhausted all available state administrative remedies." Id. at 1104. The court further stated that "[a] prisoner should attach to his S 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint." Id. Thereafter, in Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000), the court held that a prisoner was required to "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." See also Scarborough v. Morgan, 21 Fed. Appx. 279, 280 (6th Cir. 2001).7

Although we agree with the Brown court that the plain language of the PLRA requiring that prisoners exhaust their administrative remedies before filing suit reflects the Congressional policy underlying the PLRA, the pleading rule Brown adopted does not necessarily follow. Congress appears to have had two primary concerns in enacting S 1997e(a). First, Congress expressed a desire to lessen the

---

7. The position of the Eighth Circuit is not clearly defined. In McAlpin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000), the court, after citing Brown, dismissed the prisoner's complaint, noting he failed to attach evidence of exhaustion. See also Jarrett v. Norris, 12 Fed. Appx. 438, 439 (8th Cir. 2001) ("Although Jarrett submitted numerous grievances regarding his medical care, he did not present proof that he fully exhausted as to all of the claims in his complaint."); Gill v. Herndon, 8 Fed. Appx. 585, 586 (8th Cir. 2001) ("Gill failed to attach to his complaint any proof of administrative exhaustion. In fact, Gill did not even attach proof of his initial grievances that were embodied in administrative records."). Recently, however, in Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001), the court stated, without citation to Brown or McAlpin, that "we recognize that reliance upon the PLRA exhaustion requirement is an affirmative defense under Fed. R. Civ. P. 8(c)" and cited the Seventh Circuit's decision in Massey.

burden frivolous prison claims placed on federal courts. See, e.g., 141 Cong. Rec. 26,548 (1995) ("Frivolous lawsuits filed by prisoners tie up the courts, waste valuable legal resources, and affect the quality of justice enjoyed by law-abiding citizens.") (statement of Sen. Dole); see also Nyhuis, 204 F.3d at 73 (observing " 'Congress amended section 1997e(a) largely in response to concerns about the heavy

volume of frivolous prison litigation in the federal courts' ")
(quoting Alexander v. Hawk, 159 F.3d 1321, 1326 n.11
(11th Cir. 1998)) (citing 141 Cong. Rec. H14078-02 (daily
ed. Dec. 6, 1995)). Second, Congress wished to reinforce the
power of prison administrators to control prison problems,
minimizing the "interference" of federal courts in matters of
prison administration. See, e.g., Alexander, 159 F.3d at
1326 n.11 ("Congress desired 'to wrest control of our
prisons from the lawyers and the inmates and return that
control to the competent administrators appointed to look
out for society's interests as well as the legitimate needs of
prisoners.' ") (quoting 141 Cong. Rec. 26,553 (1995)
(statement of Sen. Kyl)); see also Taylor, supra at 964
(stating purpose behind the administrative exhaustion
requirement is to give "prison administrators . ... an
opportunity to correct the inmate's problem on their own.")
(citing 141 Cong. Rec. 14,573 (1995) (statement of Sen.
Kyl)).

These policies are not inconsistent with construing the
exhaustion requirement of S 1997e(a) as an affirmative
defense. Under S 1997e(c)(1) and (2), courts have the power
to dismiss frivolous lawsuits sua sponte, handily fulfilling
the first congressional policy and making it unnecessary to
view S 1997e(a) as authorizing the same action. The second
policy, that of giving prison administrators the opportunity
to control the situation within the prison, is addressed by
the exhaustion requirement itself. The rules of pleading and
proof do not bear on that issue. In fact, an opinion by
Judge Easterbrook of the Seventh Circuit suggests that
prison officials may choose to waive exhaustion,
presumably so that they can secure judicial imprimatur for
some intractable disputes. See, e.g., Perez, 182 F.3d at 536
("Filing suit before exhausting prison remedies therefore is
not the sort of defect that judges must notice even if the
defendant is happy to contest the suit on the merits.").

11

We return therefore to our decision in Williams  holding
that defendants must plead and prove failure to exhaust as
an affirmative defense. See Williams, 130 F.3d at 573.
Although we recognize that the substance of the PLRA is
different from that of Title VII, we note that Williams was
relied on by the Seventh Circuit when it held lack of
exhaustion to be an affirmative defense in the PLRA
context, Massey v. Helman, 196 F.3d 727, 735 (7th Cir.
1999). We see no good reason not to do the same,
particularly because of the similar policies underlying both
exhaustion requirements.

In their discussion of categorizing affirmative defense,
Wright and Miller recommend resort to "considerations of
policy [and] fairness." Wright & Miller, supra, S 1271, at
444. According to those authors,

    "[f]airness" probably should be viewed as a shorthand
    expression reflecting the judgment that all or most of
    the relevant information on a particular element of a

> claim is within the control of one party or that one
> party has a unique nexus with the issue in question
> and therefore that party should bear the burden of
> affirmatively raising the matter.

Id. at 445. Applying this consideration to the exhaustion requirement, it appears that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion. "[P]rison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners." Wyatt, 2002 U.S. App. LEXIS 2217, at *20. Prison officials and their attorneys can also readily provide the court with clear, typed explanations, including photocopies of relevant administrative regulations. Pro se prisoners will often lack even such rudimentary resources.

We thus join the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant.8

---

8. We do not suggest that defendants may not raise failure to exhaust as the basis for a motion to dismiss in appropriate cases. The issue is not

12

B. The District Court's Pleading Requirements

In addition to holding that failure to exhaust is an affirmative defense, we find that the District Court erred in dismissing the complaint for failure to meet the heightened pleading requirement it imposed and in doing so sua sponte. The District Court's sua sponte dismissal is inconsistent with the statutory structure of the PLRA. Subsection (c) of S 1997e, entitled "Dismissal," provides for sua sponte dismissal by a district court for certain enumerated reasons. The section provides:

> (c) Dismissal
>
> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.
>
> (2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. S 1997e(c).

Availing here is an application of the principle of expressio unius est exclusio alterius -- when a statute specifically enumerates some categories, it impliedly excludes others. See, e.g., Leatherman v. Tarant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163,

_____

raised by this case, and neither party has stated its position. See, e.g., Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 127 (3d Cir. 1997) (observing affirmative defenses may be considered on a Rule 12(b)(6) motion if the defense would "present[ ] an insuperable barrier to recovery by the plaintiff").

13

168 (1993). Section 1997e(c) explicitly provides for sua sponte dismissals in four instances: if the court is satisfied that the action is (1) frivolous, (2) malicious, (3) fails to state a claim upon which relief can be granted, or (4) seeks monetary relief from a defendant who is immune from such relief. In S 1997e(c), Congress demonstrated a capacity to clearly authorize sua sponte dismissal when it so desired. Notably absent from the list is any reference to failure to exhaust. The final sentence in S 1997e(c)(2) that "the court may dismiss the underlying claim [for the four specified reasons] without first requiring the exhaustion of administrative remedies" shows that Congress had not forgotten about the need for exhaustion, but chose not to include failure to exhaust among the grounds for which the court could dismiss sua sponte.9 Inasmuch as the omission of failure to exhaust from the categories explicitly permitting sua sponte dismissal is found in S 1997e, the same section of the PLRA that sets out the exhaustion requirement, the inference is inescapable that Congress did not intend to include failure to exhaust among the categories justifying sua sponte dismissal.10

_____

9. The statutory structure also belies any possibility that a failure to exhaust is included in (c)(1)'s broad rubric of "failure to state a claim upon which relief can be granted." As one court observed:

> Any argument that Congress intended the broad categories in Section 1997e(c)(1) to include dismissal for failure to exhaust is demolished by Section 1997e(c)(2), which grants the court power to dismiss sua sponte without requiring exhaustion of administrative remedies. It makes little sense to permit dismissal for failure to exhaust and then state the court may dismiss without "first requiring the exhaustion of administrative remedies."

Jackson, 89 F. Supp. 2d at 57 (quoting 42 U.S.C.S 1997e(c)(2)); see also Snider, 199 F.3d at 112 (" '[F]ail[ure] to state a claim,' as used in Sections 1997e(c) . . . of the PLRA, does not include failure to exhaust administrative remedies.").

10. Moreover, failure to exhaust was not included when the PLRA amended the provision authorizing prisoner in forma pauperis suits to

provide explicitly for sua sponte dismissal for certain specified reasons, see 28 U.S.C. S 1915(e)(2) (2001) (amended by Pub. L. 104-134, 110 Stat. 1321-74 (1996)) (permitting dismissals "at any time" for falsely alleging poverty, or because, inter alia, the action is frivolous or

As a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint. See, e.g., Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997); see also Snider, 199 F.3d at 111-13 (discussing extensively sua sponte dismissals in the S 1997e(a) context). Ray's failure to exhaust was not apparent from the complaint or other documents before the District Court. On the first page of his complaint, under a caption entitled "Exhaustion of Administrative Remedies," Ray alleged that the grievance process had been completed. Also, Ray's objections to the Magistrate Judge's Report and Recommendation were filed in the District Court. In those objections, Ray again noted his exhaustion, this time with more particularity, stating "Plaintiff did exhaust administrative remedies by exhausting the appeal process for all misconduct mentioned in the complaint." App. at 11. Ray also attached to his objections copies of several misconduct charges, and a handwritten copy of the final disposition of the sole misconduct of which he was found guilty. Without further inquiry, the District Court was not in a position to reach the conclusion that Ray failed to exhaust his administrative remedies.

The District Court also stated that Ray's complaint was deficient because "Ray has not demonstrated  that he has exhausted administrative remedies," Supp. at 2 (emphasis added). In so stating, the court imposed the additional requirement that a prisoner must demonstrate compliance with the exhaustion requirement. We view that holding as inconsistent with the Supreme Court's teachings in Leatherman, where the Court explained that courts should narrowly interpret statutory language to avoid heightened pleadings standards. 507 U.S. at 168. As the Court pointed out, heightened pleading standards are inconsistent with the "liberal system of 'notice pleading' set up by the federal

_____

malicious), and also instituted a screening process for prisoner suits against governmental entities and their employees, see 28 U.S.C. S 1915A(a)-(b) (directing dismissal "before docketing, if feasible" for, among other grounds, claims which seek monetary relief from defendants immune from such redress).

rules." Id.; see also Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 876-77 (3d Cir. 1995). In Crawford-El v. Britton, 523 U.S. 574 (1998), the Supreme Court applied the same rationale in the PLRA context, criticizing "the creation of new rules by federal judges." Id. at 596. The Court pointed

out that "Congress has already fashioned special rules [in the PLRA]," concluding that "[i]f there is a compelling need to frame new rules of law . . . , presumably Congress either would have dealt with the problem in the [PLRA], or will respond to it in future legislation." Id. at 596-97.

Most recently, in Swierkiewicz v. Sorema, No. 00-1853, 70 USLW 4152 (Feb. 26, 2002), the Court, in a unanimous opinion, reiterated that courts may not require greater particularity in pleading than the Federal Rules require. As Justice Thomas wrote:

> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts.

Id. at 4154 (footnote omitted). As we previously noted, no provision of the PLRA requires pleading exhaustion with particularity.

Ray asks us to use this occasion to clarify that a Pennsylvania inmate may satisfy his or her exhaustion obligation in the course of the proceedings charging the inmate with misconduct under the Inmate Disciplinary Procedures. We decline to so hold. That issue should be considered in the first instance by the District Court because it may require information regarding how prison administrators interpret the scope of the Inmate Disciplinary Procedures, the Inmate Grievance System, and the interaction between them.

IV.

CONCLUSION

For the reasons set forth, we will reverse the decision of the District Court dismissing Ray's complaint.

16


A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17