Karen **BLYDEN**, et al. Government of the Virgin Islands, Appellant,

v.

David L. **MONOSON**, Appellee.

No. CIV.A.2002–217.

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

Considered: Feb. 27, 2004.

Filed: April 14, 2004.

Joel H. Feld, Esq., Assistant Attorney General, V.I. Department of Justice, St. Thomas, VI, for Appellant.

Karl R. Percell, Esq., St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and PATRICIA D. STEELE, Judge of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

## MEMORANDUM

PER CURIAM.

## I. INTRODUCTION

The government has timely appealed the trial court's declaratory judgment interpreting local law to award certain career incentive pay to the appellee. After due consideration, we find no error so we will affirm the declaratory judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In December 1980, Monoson attained a degree in criminology. Between June 22, 1981 and April 14, 1989, the Government of the Virgin Islands employed Monoson as a police officer. Between October 1981 and April 1989, the government paid Monoson a base salary with a twenty percent pay differential based on his educational qualifications.

In April 1995, the government re-hired Monoson as a police officer. Monoson contends that at the time of his re-hiring, the government assured him that he would receive additional compensation for his prior years of service and continue to receive his educational pay differential. The government did not pay this additional compensation.

Monoson claims that in January 1996, he was told that the central personnel office had denied his pay for prior years of service. On January 24, 1996, Monoson wrote a brief memorandum describing his grievance to the police commissioner.[1]

On May 16 1996, Monoson appeared in a hearing before the police chief. On May 24, 1996, the police chief issued a decision recommending that the government grant Monoson this additional compensation. On May 31, 1996, the police commissioner rejected this recommendation, finding that applicable law limited the educational pay differential to police officers who, while employed, continued their education with prior approval from the police department. The police commissioner also denied, without explanation, Monoson's requested pay for his earlier years of service. On June 18, 1998, Monoson filed an action for declaratory judgment against the government asking the Territorial Court to determine the legal effect of section 570 on his requested compensation. (Appellant's App. ["App."] at 15.) On March 3, 2000, the matter came on for bench trial but was dismissed after the parties advised the court that the matter was settled. (App. at 16.) When the settlement failed, the court granted Monoson's motion to reopen. (*Id.*) On September 27, 2001, after opening statements, the government again wanted to settle, but the trial court asked the parties to file motion practice. (*Id.*) On December 3, 2001, Monoson moved for summary judgment. Although

---

1. In the appellant's appendix is an April 29, 1996 letter from the union to the police commissioner requesting that Public Employees Relations Board ["PERB"] arbitrate this matter under the collective bargaining agreement on Monoson's behalf. (App. at 19.) The appendix also contains a collective bargaining agreement effective from October 1, 1996 to September 30, 1999 that was signed by the parties on October 1998. (*Id.* at 20–33.) As there is no indication that these documents were presented to the trial court, they cannot form part of the record on appeal. *See Kirshner v. Uniden Corp. of America,* 842 F.2d 1074, 1077 (9th Cir.1988)(construing language in Rule 10 of the Federal Rules of Appellate Procedure that is identical to Rule 10 of the V.I. Rules of Appellate Procedure).

on December 21 the government moved for an extension of time to file its motion or opposition, there is nothing in the record indicating that the extension was granted or denied.

Almost ten months later, on October 9, 2002, the trial court granted Monoson's motion for summary judgment finding, *inter alia*, (1) the government had waived the right to argue that Monoson failed to exhaust his administrative remedies, (2) that 3 V.I.C. 570(b) required the government to credit Monoson's prior years of service in his base pay upon re-hiring, (3) that section 570's legislative intent did not bar Monoson from receiving the educational pay differential just because he completed his degree before he was rehired, and (4) that the government's past payment of the educational pay differential estopped them from denying Monoson this compensation upon his re-hiring. (App. at 5–14.) The trial court, therefore, adjudged that the "Career Incentive Program" of section 570 applied to Monoson's re-hiring and ordered that the government pay him the additional compensation. (App. at 3.)

On November 18, 2002, the Government of the Virgin Islands appealed the trial court's declaratory judgment and opinion. On appeal, the government alleges the trial court erred: (1) by exercising jurisdiction over this matter, (2) in awarding benefits without considering the union's collective bargaining agreement under 24 V.I.C. § 374(e), and (3) in failing to find the union a necessary party.

## III. DISCUSSION

### A. Jurisdiction and Standards of Review

■ This Court has jurisdiction to review final judgments and orders of the Territorial Court in all civil cases. *See* 4 V.I.C. § 33; Section 23A of the Revised Organic Act.[2] "Findings of fact shall not be set aside unless clearly erroneous." 4 V.I.C. § 33. The standard of review for this Court in examining the Territorial Court's application of law is plenary. *See Nibbs v. Roberts*, 31 V.I. 196, 204, 1995 WL 78295 (D.Virgin Islands 1995).

### B. The trial court did not err in issuing the declaratory judgment

■ Appellant argues for the first time on appeal that the appellee lacked standing because this matter is subject to the terms and conditions of the PBA's collective bargaining agreement with the government. (Appellant's Br. at 8–9.) Monoson did not sue under the collective bargaining agreement, but instead asked the trial court for a declaratory judgment of his entitlement to participate in the career incentive pay program provided in 3 V.I.C. § 570. *See Rivera*, 635 F.Supp. at 798 (finding a suit for a disability benefit provided by Title 3, Chapter 25 to be a statutory dispute and not a contractual dispute subject to the collective bargaining agreement).

■ The government also alleges for the first time on appeal that the trial court lacked jurisdiction because appellee filed his complaint two years after a request for arbitration to the PERB. (Appellant's Br. at 8–9.) Basically, the government now attempts to argue that Monoson failed to exhaust his administrative remedies. The trial court ruled that this was an affirmative defense that the government waived. (App. at 9.) The trial court relied on *Ray v. Kertes*, 285 F.3d 287, 292 (3d Cir.2002), which held that the statutory exhaustion of remedies requirement was an affirmative

---

**2.** Revised Organic Act of 1954, § 23A, 48 U.S.C. § 1614, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159–60 (1995) (preceding V.I. CODE ANN. tit. 1).

defense. The exhaustion requirement the government now seeks to raise on appeal, however, is jurisdictional and not statutory. Therefore, we must consider it. Here, where we find the challenged agency action presents a clear and unambiguous violation of statutory rights, exhaustion is not required. *See Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir.1980). Therefore, the trial court did not err in exercising jurisdiction.

■ The government alleges that 24 V.I.C. § 374(e) limits the benefits under 3 V.I.C. § 570 to the terms of the applicable collective bargaining agreement. (Appellant's Br. at 6–7.) We disagree. By and through section 570, the Virgin Islands legislature established "a career incentive pay program offering pay differentials to police officers . . . as a reward for furthering their education in the field of police . . . beyond the minimum qualifications set forth in the job class specifications." The government relies on section 374(e) which provides that:

> The benefits and privileges conferred upon public employees by Title 3, chapter 25 of this Code shall be applicable to public employees covered by a negotiated bargaining agreement *only to the extent such benefits and privileges are specifically provided in such agreement.*

(emphasis added). We do not agree that section 374(e) limits section 570 because this subsection must be read in the context of the entire statute. The first subsection of the statute in fact provides that

> rates of pay, hours, salaries, employee benefits, terms and conditions of employment and all matters relating thereto may be specifically negotiated in a collective bargaining proceeding between the public employer and the exclusive representative *unless otherwise specifically restricted by law.*

24 V.I.C. § 374(a) (emphasis added). The legislature, in enacting section 570, has "specifically restricted" the government's ability to "specifically negotiate" over these pay differentials. Therefore, the trial court did not err in failing to consider section 374(e), since a plain reading of 374(a) provides that the collective bargaining agreement could not modify the career incentive pay program at 3 V.I.C. § 570.[3]

Because the trial court properly did not consider the collective bargaining agreement in this action for declaratory judgment, the government's arguments that the union was a necessary party also must fail.

## IV. CONCLUSION

We affirm the decision of the trial court because it properly exercised jurisdiction and was not required to examine the collective bargaining agreement or join the union as a party before rendering a declaratory judgment regarding the career incentive pay program.

---

**3.** Since section 374(e)'s enactment, the legislature has amended section 570 several times, most recently by a 2002 act that retroactively applied the educational pay differential to December 31, 1996. This lends further support to our conclusion that section 374 does not allow the terms of a collective bargaining agreement to limit the benefits of section 570's Career Incentive Program.