**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3019
_____


DERRICK MACK,
                                        Appellant

v.

SUPERINTENDENT M. KLOPOTOSKI; NORMAN DEMMING;
MARTIN WALSH; PATRICIA HARDEEM; ROVINSKI, Activities Director


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.:  4-08-cv-01096)
District Judge: Honorable John E. Jones, III

_____

Argued on July 17, 2013

(Opinion filed:  September 16, 2013)


Before:  RENDELL, SMITH and ROTH, <u>Circuit Judges</u>


Sara A. Aliabadi, Esquire **(Argued)**
Bruce P. Merenstein, Esquire
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA   19103

*Counsel for Appellant*


1

Kathleen G. Kane
Attorney General
Howard G. Hopkirk, Esquire **(Argued)**
Senior Deputy Attorney General
John G. Knorr, III, Esquire
Chief Deputy Attorney General
Chief, Appellate Litigation Section
Office of Attorney General of Pennsylvania
Strawberry Square, 15th Floor
Harrisburg, PA   17120

*Counsel for Appellee*

---

O P I N I O N

---

**RENDELL**, <u>Circuit Judge</u>:

Derrick Mack, who was at all relevant times a prisoner at SCI Dallas in Pennsylvania, filed two grievances against various Pennsylvania Department of Corrections employees ("Defendants").  One grievance related to the inadequacies of the prison law library and Mack's difficulty in obtaining the New Jersey State Rules of Court.  The other related to the poor condition of the prison's basketball court and injuries Mack suffered as a result of SCI Dallas's failure to fix the court.  Both grievances were ultimately dismissed because Mack failed to provide the Secretary's Office of Inmate Grievances and Appeals (the "Secretary") with required documents.  Mack then filed a 42 U.S.C. § 1983 action against Defendants, alleging multiple violations of his constitutional rights.  Defendants, relying on Mack's previously-mentioned failure to provide the Secretary with necessary documents, filed a motion for summary judgment,

asserting that Mack failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"). The District Court granted the motion. Mack now appeals. For the reasons discussed below, we will affirm.

SCI Dallas has a three-step procedure for the review of inmate grievances. The procedure is detailed in Department of Corrections Administrative Directive 804 ("DC-ADM 804"). Step 1 requires an inmate to submit a grievance in writing to the Facility Grievance Coordinator within fifteen days of the events giving rise to his grievance. All grievances are assigned a tracking number and entered into the Department of Corrections' Automated Inmate Grievance Tracking System. The Facility Grievance Coordinator then assigns the grievance to a Grievance Officer, who conducts the initial review of the grievance and provides a written response to the inmate. If the inmate is dissatisfied with the Grievance Officer's decision, he may proceed to Step 2 and file an appeal with the Facility Manager. If the inmate is dissatisfied with the outcome of the Step 2 appeal, he may proceed to Step 3 and file an appeal with the Secretary. Step 3 requires the inmate to provide the Secretary with photocopies of (1) the initial grievance; (2) the Grievance Officer's decision; (3) the appeal to the Facility Manager; and (4) the Facility Manager's decision. "Failure to provide the proper documentation may result in the appeal being dismissed." (A. 137.) Mack's compliance with Step 3 is at issue in this case.

In December 2007, Mack submitted two grievances to the Facility Grievance Coordinator at SCI Dallas. The grievances were entered into the Tracking System and assigned to Grievance Officers. Both Grievance Officers ruled against Mack. Mack

3

appealed these decisions to the Facility Manager, who affirmed the Grievance Officers' decisions. Mack then proceeded to Step 3 and appealed to the Secretary. Mack maintains that he included all the necessary photocopies and/or attachments in his appeals. The Tracking System indicates that Mack failed to provide photocopies of his appeals to the Facility Manager (the "Step 2 appeals") for both grievances.

On February 14, 2008, the Chief Grievance Officer in the Secretary's Office sent Mack notices that he had not properly complied with the grievance appeal procedure (the "Notices"). In relevant part, the Notices stated:

> Review of the information you provided indicates that your appeal is incomplete. You are not permitted to appeal to this Office unless you have complied with the procedures established in the DC-ADM 804 requiring that all documentation relevant to the appeal be provided upon appeal. Therefore, you have ten (10) working days from the date of this notice to provide this Office with all completed documents necessary for conducting final review. A failure to provide the missing information (identified below) within this time period will result in a dismissal of your appeal.

(A. 146.) The Notices identified the "Required Information" that was missing as Mack's "appeal to Facility Manager, signed & dated" and instructed Mack to "forward a copy" of the document to the Secretary's office. (*Id.*) At the very bottom of the page, the Notices noted that "[e]ach facility has established local procedures for photocopying services" and that if an inmate is indigent, "DOC policy provides that copies may be made at no cost [so the inmate can] . . . submit the document required to appeal [his] grievance." (*Id.*)

4

Mack responded to the Notices by providing the Secretary with handwritten copies of his Step 2 appeals.[1] Mack's submission did not explain why he did not provide photocopies, and Mack concedes that he did not inform prison officials that he was unable to procure photocopies of the requested documents, which he now contends on appeal. On February 28, 2008, the Secretary dismissed Mack's appeals because Mack failed to provide the photocopies that the Notices requested.

On June 9, 2008, Mack filed suit against Defendants, alleging multiple violations of his constitutional rights. Defendants moved for summary judgment, arguing that Mack's claims were barred because he did not properly exhaust his administrative remedies due to his failure to comply with the Notices. The District Court agreed with Defendants and granted the motion. Mack then filed a motion to vacate judgment, which the District Court construed as a motion for reconsideration, and denied for the reasons stated in its summary judgment order.

---

[1] At oral argument, Mack suggested for the first time that he submitted his original Step 2 appeals in response to the Notices. We find this assertion difficult to credit. DC-ADM 804 states that "[d]ocuments submitted in support of a grievance become part of the grievance and will not be returned." (A. 137.) Mack provides no evidence that prison officials ignored this guideline and returned his Step 2 appeals after he filed them in 2007. Thus, we fail to see how Mack could have been in possession of his original documents when he responded to the Notices in 2008. As such, our opinion credits the more plausible position that Mack advanced in his appellate brief that he submitted handwritten copies of his Step 2 appeals in response to the Notices, (Brief of Appellant at 15, 16, 25; Reply Brief of Appellant at 5),—not his original documents. We also note that the Secretary's Office appropriately questioned the validity of the handwritten copies of Mack's appeals to the Facility Manager. The date of the appeal on the handwritten copies preceded the Initial Review decision. (A. 148-49, 190, 192.) According to DC-ADM 804, however, an appeal to the Facility Manager cannot be filed until the inmate has received the Initial Review decision.

Mack now appeals to this Court, advancing two theories.[2]  First, he contends that

Defendants failed to prove the affirmative defense of "failure to exhaust" because they

did not prove that he did not submit his Step 2 appeals when he filed his appeals to the

Secretary.  Under this theory, Mack's compliance with the February 14 Notices is

irrelevant because according to Mack, if Defendants cannot prove that he did not comply

with the original requirement, then he should not be penalized for not complying with the

"additional" requirement in the Notices.  Second, Mack argues that he substantially

complied with the Notices because (1) his failure to provide photocopies of his Step 2

appeals was only a "minor" error, as SCI Dallas had copies of the appeals that the

Secretary could have accessed; (2) he "technically" complied with the procedures by

providing handwritten copies of his appeals because the Notices instructed Mack to

forward a "copy" of the requested information; and (3) the remedy was "unavailable"

because the photocopier was broken, and he thus could not comply with the grievance

procedures.  We review a district court's grant of summary judgment de novo.  *Doe v.*

*Luzerne Cty.*, 660 F.3d 169, 174 (3d Cir. 2011).

The PLRA requires prisoners to exhaust prison grievance remedies before

initiating a lawsuit.  42 U.S.C. § 1997e(a).[3]  Exhaustion is mandatory and must be

"proper," which requires a prisoner to "us[e] all steps that the agency holds out, and [to

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343.  We have jurisdiction under 28 U.S.C. § 1291.
[3] The exhaustion requirement states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

do] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion."); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (explaining that proper exhaustion requires a prisoner to "comply with all the administrative requirements"). Although exhaustion is mandatory, a prisoner must only exhaust remedies that are "available." 42 U.S.C. § 1997e(a). The availability of an administrative remedy is a question of law that we review de novo. *Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002). An administrative remedy is unavailable when a prison official prevents a prisoner from pursuing the prison grievance process. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002).

Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 217; *Brown*, 312 F.3d at 111.

As an initial matter, we agree with the District Court that the relevant inquiry is Mack's compliance with the Notices. Regardless of whether Mack initially sent the Secretary his Step 2 appeals, the Secretary did not have the documents and instructed Mack to submit them or his Step 3 appeals would be dismissed. As there is no indication of bad faith on the part of the Secretary in not having possession of the documents, Mack was required to comply with this directive. His compliance with the Notices is thus the appropriate subject of our analysis, and we therefore reject Mack's first theory.

7

We also agree with the District Court that Mack did not properly comply with the Notices. First, we do not accept Mack's argument that his failure to provide photocopies of his Step 2 appeals was only a "minor" error. The Secretary must be able to review an inmate's previous submissions in order to evaluate the merits of his final appeal. The grievance procedure thus, not surprisingly, requires an inmate to submit his previous appeals to the Secretary and stresses the importance of the requirement by warning the inmate that a failure to provide the documents "may result in the appeal being dismissed." (A. 137.) In this case, the importance of the requirement was put in further relief by the Notices, which referred to the documents as "Required Information" and explicitly instructed Mack that if he did not submit the missing documents, his appeal *would be* dismissed. (A. 146.) As there is no evidence in the record that suggests that DC-ADM 804 and the Notices overstated the necessity of an inmate providing a photocopy of his earlier appeals to the final reviewer, we cannot conclude that Mack's error was only minor and therefore will not disturb the decision of the District Court on this basis.[4]

---

[4] Mack relies on language in *Woodford* that an inmate must comply "with an agency's deadlines and other *critical* procedural rules", 548 U.S. at 90-91 (emphasis added), to argue that he did not procedurally default by not complying with the photocopy requirement because that requirement is not a "critical" rule. Mack does not explain why he believes the rule is not critical, but we deduce that it is for the same reasons that he contends his error was "minor": the Secretary could have accessed Mack's Step 2 appeals even if Mack failed to provide them. We find this argument fails for the same reason that we conclude the error was not minor. Thus, even if Mack is correct that he must comply with only the "critical" rules in grievance procedure, rather than all the rules, the outcome of his appeal would be the same.

Second, we find that the Notices were clear that Mack needed to provide photocopies and thus reject Mack's argument that he technically complied with the Secretary's request by providing handwritten copies of the documents. The Notices specifically reference the DC-ADM 804 requirements, which state that photocopies are required. In addition, the Notices stated that Mack needed to provide his "appeal to Facility Manager, signed & dated." (*Id*.) The Notices also stated that indigent inmates could make copies for free so that they could "submit the documentation required to appeal [their] grievance." (*Id*.) All of these facts make it clear that a photocopy was required. As a result, we do not find that Mack's providing handwritten copies of his Step 2 appeals "technically" complied with the Notices and thus will not disturb the decision of the District Court on this ground.[5]

Finally, we do not agree that the remedy was unavailable. Mack had ten days to comply with the Notices, but at no time in those ten days did he alert anyone that the photocopier was broken.[6] His response to the Notices also did not indicate any reason why he was not complying or unable to comply. We decline to hold that a step in the process is "unavailable" where an inmate does not give the prison officials the opportunity to remedy the situation. Indeed, such a holding would be contrary to the purpose of the PLRA. It would allow prisoners to avoid review by prison officials by

---

[5] We can well understand the Secretary's position that handwritten documents are not reliable and allowing them could encourage the submission of documents that are not the precise replicas of what was originally submitted.

[6] Indeed, we note that the Initial Review decision indicated that "a new copier" had been installed in December, 2007. (A. 192.) The Facility Manager acknowledged as much in his decision. (A. 191.) Thus, it appears that a copier was available when Mack filed his appeal to the Facility Manager.

concealing their inability to comply with the grievance procedures and then arguing to a district court, after being dismissed on procedural grounds, that they were unable to comply with the procedures. Thus, as there is no evidence that prison officials actively prevented Mack from complying with the photocopy requirement, we will not disturb the District Court's ruling that Mack failed to properly exhaust his administrative remedies.

For the reasons stated above, we will affirm the order of the District Court.