**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2017
_____

CHARLES SHUMANIS,
Appellant

v.

LEHIGH COUNTY; WARDEN DALE MIESEL;
WARDEN JANINE DONATE; SERGEANT ERIC SABORSKY;
SERGEANT RONALD MARCH; CORRECTION OFFICER ERIC NOWICKI
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5-14-cv-06560)
District Judge: Honorable Edward G. Smith
_____

Submitted Under Third Circuit LAR 34.1(a)
November 8, 2016
_____

Before: McKEE and RESTREPO, *Circuit Judges*, and HORNAK,[*] *District Judge*.

(Filed: January 18, 2017)
_____

OPINION[**]
_____

[*] Honorable Mark R. Hornak, District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

[**] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

HORNAK, *District Judge*.

Charles Shumanis appeals from the March 29, 2016 order of the United States District Court for the Eastern District of Pennsylvania entering summary judgment against him and in favor of Appellees based upon its conclusion that Shumanis failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Several months after the District Court's judgment, the Supreme Court, in *Ross v. Blake*, ⸺ U.S. ⸺, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016), addressed in detail the circumstances in which an inmate must exhaust his or her administrative remedies under the PLRA and when such exhaustion might be excused. In *Ross*, the Supreme Court held that although there are "no limits on an inmate's obligation to exhaust," "the remedies must indeed by 'available' to the prisoner" for the exhaustion requirement to obtain. *Id.* at 1856.

For the reasons set forth below, we will vacate the District Court's judgment and remand this case for further proceedings.

## I.

On November 14, 2014, Shumanis filed this lawsuit invoking 42 U.S.C. § 1983 and alleging that individual defendant wardens and officers of the Lehigh County Jail (Jail), as well as Lehigh County itself, violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Shumanis claimed that on November 16, 2012, while he was an inmate at the Jail, Jail personnel brought him into the Jail's administration and discharge room so that he could complete paperwork for a pending transfer to state prison. There, Shumanis was attacked and brutally beaten by

2

three other inmates. He suffered numerous injuries, including blurred vision in his left eye, five lost teeth, a torn lip, a closed head/brain injury, dizziness, back pain, numbness in his right hand, a subdural hematoma, a dislocated mandible, permanent facial scarring, a left eye deformity, and mental and cognitive concentration issues. One of Shumanis's attackers was a man named Roberto Diaz. A no-contact order was in effect to protect Shumanis from Diaz because Shumanis previously served as a witness against Diaz. According to Shumanis, Jail personnel either condoned the attack or improperly failed to prevent it.

The District Court allowed the parties to engage in limited discovery to determine whether Shumanis had exhausted his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Following that discovery, Lehigh County and the individual Defendants moved for summary judgment, and—finding they were entitled to it—the District Court entered summary judgment in their favor. The District Court concluded that Shumanis failed to utilize his administrative remedies under the Jail's Grievance Policy and Procedure (GPP). Specifically, the District Court made the following factual findings and legal conclusions:

> (1) the plaintiff was aware of the jail's grievance procedure, (2) he needed
> to exhaust his administrative remedies by grieving any issues concerning
> any improper conduct by jail staff because such action constituted grievable
> "staff action" under the jail's grievance policy, (3) the plaintiff did not file
> an informal grievance relating to the acts at issue, (4) even if he did file an
> informal grievance, the jail's grievance policy required inmates to file a

3

formal grievance and proceed through any appeal from a denial of that

grievance before the inmate's remedies are considered to be exhausted, and

(5) the plaintiff failed to exhaust his administrative remedies because he

admits that he never timely filed a formal grievance relating to the

November 2012 incident at issue.

*Shumanis v. Lehigh Cty.*, No. 14-cv-6560, 2016 WL 1237322, at *1 (E.D. Pa. Mar. 29,

2016). Importantly, the text of the Jail's GPP provides that administrative remedies are

available for "[s]taff actions," but "[s]tate and federal laws" are "issues [that] are not

grievable under [the] policy." App. Vol. I at 46.

## II.

The District Court had jurisdiction over this case under 28 U.S.C. § 1331. We

have jurisdiction over this appeal under 28 U.S.C. § 1291. Our review of the District

Court's grant of summary judgment is plenary, and we apply the same standards that the

District Court applied in determining whether summary judgment was appropriate. *Giles

v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Viewing the evidence in the light most

favorable to the nonmovant, summary judgment is appropriate if there is "no genuine

issue as to any material fact and . . . the moving party is entitled to judgment as a matter

of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). "The mere existence of some evidence in

support of the nonmovant is insufficient to deny a motion for summary judgment; enough

evidence must exist to enable a jury to reasonably find for the nonmovant on the issue."

*Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

The PLRA requires inmates to exhaust prison grievance procedures before suing in court. 42 U.S.C. § 1997e(a). It provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* Where a prisoner has not exhausted his administrative remedies, a lawsuit challenging prison conditions in federal court is procedurally defaulted. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004). This mandatory exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). A prisoner need only exhaust those administrative remedies that are actually "available" to him. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion," *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill*, 372 F.3d at 231), and interpretation of the prison's grievance policy is akin to statutory construction. *Spruill*, 372 F.3d at 232. "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" as they are "defined . . . by the prison

5

grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

## III.

One of Shumanis's arguments, both to the District Court and on this appeal, is that he could not or need not have filed a grievance because an administrative remedy was not "available" to him under the GPP. A remedy was not available, according to Shumanis, because his complaints involved alleged violations of "federal law[]," issues which—at least according to one reading of the GPP—are not grievable.

Addressing Shumanis's argument that issues of federal law were not grievable, the District Court concluded that Shumanis's interpretation of the GPP was "untenable and unreasonable" because it would allow any inmate to bypass the grievance process simply by alleging violations of federal law. *Shumanis*, 2016 WL 1237322, at *12. Such an interpretation, the District Court found, "would lead to an unreasonable or absurd result that is inconsistent with the purpose of the PLRA." *Id.* Instead, the District Court concluded, the GPP's exclusion of "federal laws" from the administrative grievance process really intended to convey to prisoners that they could not directly challenge such laws through the Jail grievance process. *Id.* Beyond its analysis of the language of the GPP, however, the District Court made no factual finding as to the actual availability of a remedy for prisoner complaints that allege violations of federal law.

Following the District Court's judgment, the Supreme Court, in *Ross*, addressed in detail the circumstances in which an inmate must exhaust his or her administrative remedies under the PLRA. There, Shaidon Blake, a state prisoner, alleged that he was

6

attacked by prison guards while the guards were escorting him from his regular cell to the facility's segregation unit. 136 S. Ct. at 1855. Blake complained to a senior corrections officer, who referred the incident for investigation by the state prison system's internal investigative unit. *Id.* Although Blake believed that, in doing so, he had exhausted his administrative remedies, the District Court found that the prison's policy required a formal grievance to the prison warden. *Id.* The Court of Appeals for the Fourth Circuit held that a reasonable belief that a prisoner has exhausted his or her remedies, even if mistaken, is sufficient to allow a suit to proceed in light of the PLRA. *Id.* at 1856. The Supreme Court disagreed, holding that there are "no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.*

That holding, however, did not end the Supreme Court's inquiry. Blake's suit might still be viable, the Court reasoned—despite his failure to exhaust administrative remedies—because of his "contention that the prison's grievance process was not in fact available to him." *Id.* "A prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. In other words, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court went on to explain that the actual availability of remedies may turn on questions of fact. For example, an administrative procedure is unavailable whenever: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that is becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3)

7

"prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The Supreme Court also made it clear that lower courts are better positioned to make factual findings regarding the actual availability of administrative remedies under the PLRA. *Id.* at 1862. Examining the particular facts of Blake's case, the Court found that—although the prison's grievance policy provided that prisoners could grieve "all types" of complaints—the fact that the state maintained an investigative unit to investigate charges of staff misconduct raised a question about whether relief under the prison's grievance policy was, as a matter of fact, actually available to Blake. *Id.* Because the record before the Court was not "conclusive" on the issue of availability, the Court remanded the case for further factual development. *Id.*

In this case, the District Court properly concluded that interpretation of the GPP is a question of law. *See Spruill*, 372 F.3d at 232. In light of the Supreme Court's decision in *Ross*, however, we conclude that the decisional process would benefit from the District Court's consideration, in the first instance, of factual questions surrounding the actual availability of administrative remedies.[1] The District Court already heard argument on

---

[1] In particular, we note that the GPP's exclusion of remedies for "issues" of "federal law[]" raises a question about the actual availability of a remedy for Shumanis. The District Court might conclude, for example, that a grievance would have been a "dead end" because of the way Jail officials administer the GPP. *See Ross*, 136 S. Ct. at 1859. It also might conclude that ambiguities in the GPP's text regarding grieving issues of federal law render the policy so opaque on such matters that no reasonable prisoner could discern or navigate it. *See id.* Or, the District Court might conclude that the GPP and its administration do not suffer from these or any other infirmities. We express no opinion as to the resolution of such matters, concluding that post-*Ross*, the sounder course is to permit the District Court to consider them in the first instance.

8

the exhaustion issue and is familiar with the underlying facts of this case. Should the District Court conclude that further factual development is warranted, as it was in *Ross*, it is also better positioned to manage the nature and scope of the parties' discovery.

**IV.**

For the foregoing reasons, we will vacate the District Court's judgment and remand the case for further proceedings consistent with the Supreme Court's decision in *Ross* and with this Opinion.